Edward I. LEEFER, Appellant,

v.

ADMINISTRATOR, NATIONAL
AERONAUTICS AND SPACE
ADMINISTRATION et al.

No. 74–1699.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 4, 1975.

Decided April 7, 1976.

Reconsideration Denied April 27, 1976.

Gladys E. Hirsch, with whom Bernard Fever, Rockville, Md., was on the brief, for appellant.

Mary Elizabeth Medaglia, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry and Michael J. Ryan, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before McGOWAN, ROBINSON and ROBB, Circuit Judges.

PER CURIAM:

Under review on this appeal is a judgment of the District Court dismissing a suit brought by Bernard L. Leefer as a challenge to his transfer by the National Aeronautics and Space Administration (NASA) from one position to another. The suit followed Leefer's unsuccessful efforts within NASA and before the Civil Service Commission (CSC) to gain restoration to his earlier job. We perceive no basis for judicial intervention and accordingly affirm.

I

The controversy arose when Leefer was notified that he would be shifted from his post at NASA headquarters in Washington, D.C., to another at NASA's Lewis Research Center in Cleveland, Ohio.[1] Asserting that the change would bring about a reduction in his rank,[2] Leefer first sought to appeal the proposed action to NASA's Director of Personnel.[3] In response to this effort, Leefer was informed that the transfer was not considered to be an "adverse action,"[4] and that accordingly it was nonappealable.[5] The vital inquiry, the Director felt, was whether the "[r]eassignment [was] to a po-

---

1. Leefer was to be shifted from the position of Manager of Space Propulsion and Power Technology Applications, Space and Power Division, Office of Advanced Research and Technology, in Washington, to the position of Assistant and Consultant to the Chief, Power Systems Technology Branch, in Cleveland.

2. See 5 C.F.R. §§ 752.101 et seq. (1974), which since have been amended. References in this opinion are to the provisions in effect when the administrative proceedings in Leefer's case took place.

3. The reassignment was effected while Leefer was attempting to appeal it administratively.

4. By regulations of the CSC, an agency action is appealable only when it is "adverse." See 5 C.F.R. §§ 752.101 et seq. (1974). The "adverse action" regulations apply only in cases of
   (1) Removal;
   (2) Suspension for more than 30 days;
   (3) Furlough without pay; and
   (4) Reduction in rank or pay including that taken at the election of the agency after a position classification decision by the Commission.
   5 C.F.R. § 752.201(b) (1974).

5. A.R. 255–256.

sition which is subordinate to the position previously held or subordinate to a position equivalent to the position previously held."[6] Translocation is not in and of itself a reduction in rank, the Director said;[7] acknowledging that the organizational structures of NASA's Washington and Cleveland installations were not identical,[8] the Director compared the two positions[9] and concluded that the test of reduction-in-rank had not been met.[10] The Director declared that "[i]t was our intent that [Leefer] suffer no reduction, in salary, grade, or rank as a result of the reassignment and we truly believe that no such loss has occurred."[11]

Leefer then brought the matter to the CSC,[12] and in due course the Chicago Regional Office announced that agency's initial decision.[13] The Regional Office expressed the view that an employee is reduced in rank when he is subjected to a personnel action resulting in a lowering of his relative standing in the agency's organizational scheme,[14] as, for example, on reassignment to a post inferior to the one previously held.[15] Analyzing the functions of Leefer's former job, the Regional Office believed that Leefer probably supervised some work in Washington that was performed in stations at Lewis to which he was there subordinate, but thought that this alone would not warrant the conclusion that he had been demoted in rank.[16] Like

NASA'S Director of Personnel,[17] the Regional Office found that NASA's Washington and Cleveland operations were set up differently, and that while Leefer's old and new positions were properly classified at the same level, there was no clear basis for determining their relative rank.[18] On these grounds, the Regional Office held that the evidence did not support a finding that they differed in rank, and on that basis denied the appeal.[19]

Leefer next resorted to the CSC's Board of Appeals and Review, which rendered the final administrative decision in the matter.[20] The Board observed that "[t]he term 'rank' has been held by the Commission and the courts to mean something more than grade or its equivalent,"[21] and that

> [b]asically, it means an employee's relative standing in the agency's organizational structure, as determined by his official position assignment. . . . When an employee is made the subject of an official personnel action which results in a lowering of his relative standing in the agency's organizational structure, a reduction in rank has occurred, even though the employee has not been reduced in numerical grade, class, or level.[22]

The Board agreed with the Regional Office, however, that NASA's operations in Washington and Cleveland were too dissimilar to

**6.** A.R. 255, quoting Federal Personnel Manual ch. 752, subch. S2, supp. 752–1 (1972).

**7.** A.R. 255.

**8.** A.R. 255.

**9.** A.R. 256.

**10.** A.R. 256.

**11.** A.R. 256.

**12.** See 5 C.F.R. § 752.203 (1974).

**13.** A.R. 206–208. The Regional Office had earlier advised Leefer that the right to appeal did not exist unless it was first established that he had been reduced in rank; that it had been tentatively determined that he had not been, but that the record was being left open to provide an opportunity to present further information or argument in support of his position.

A.R. 244–245. Copies of pertinent material from the Federal Personnel Manual were supplied as guidelines. A.R. 244–245.

**14.** A.R. 246.

**15.** A.R. 246.

**16.** A.R. 246–247.

**17.** See text *supra* at note 8.

**18.** A.R. 247–248.

**19.** A.R. 248.

**20.** A.R. 33–38.

**21.** A.R. 36.

**22.** A.R. 36–37.

enable a ranking of the two jobs.[23] The Board also found that Leefer's reassignment from Washington to Cleveland did not fall within any of the traditional categories of reduction in rank.[24] The Board thus affirmed the holding of the Regional Office that the evidence did not justify the conclusion that the two posts were unequal in rank, and that therefore there was no adverse action within the CSC's purview.[25] Leefer's request for reopening and reconsideration was denied.[26]

Leefer then filed an action in the District Court.[27] His complaint, as amended, sought relief in the nature of mandamus restoring him to the rank and general function of his earlier position in Washington.[28] The complaint also requested an injunction to bar further transfer action, and damages. The District Court entered summary judgment dismissing the suit.[29] Limiting its review to the administrative record, the court found "that there is substantial evidence in the record to support the decision of the [Civil Service] Commission that [Leefer's] reassignment was to a position not subordinate to one previously held and therefore not a reduction in rank."[30] The court explained:

Although [Leefer] has presented relevant evidence respecting the differences in duties between the two positions, as well as the rank and grade of his new supervisor and co-workers, the test is not how this Court would decide the issue, but whether substantial evidence in the record supports the decision of the Commission. . . . That decision was based in part on a decision issued . . . by the Director of Personnel for NASA which compared [Leefer's] positions in Washington and Cleveland and found the latter not subordinate to the former. NASA's assessment of the comparative equality of employee positions within its own agency must be accorded great weight in keeping with the cardinal principle that an agency has wide discretion in exercising its reassignment authority. [Leefer's] burden in proving abuse of such discretion is a heavy one . . . . . [Leefer's] former position in the Washington organization was unique to NASA and consequently difficult to reconstruct in the Lewis Research organization for purposes of comparing the positions. Both organization[s] are set up differently and neither is by itself subordinate to the other. Moreover, [Leefer] was properly classified at grade GS–15 in both positions. Although [Leefer] may indeed function with less autonomy and report to a lower ranking supervisor at Lewis than in Washington, these factors by themselves are insufficient to make a *prima facie* case for a reduction in rank.[31]

## II

■ Regulations of the CSC confer broad authority upon federal agencies to reassign

---

23. A.R. 37. As examples of reduction in rank, the Board listed the following:

> (1) reassignment from a position which has been determined to be worth a higher grade, either on the basis of a new classification standard or as the result of an original classification error, when the incumbent meets the legal and qualifications standards for promotion to a higher grade;
> (2) reassignment to a position which is subordinate to the position previously held;
> (3) reassignment to a position which is subordinate to a position which is equivalent to the position previously held; and
> (4) reassignment with loss of rank during reorganization when the reassignment is to a vacant position in a different competitive level and the agency does not process the action under the reduction-in-force procedure.

A.R. 37.

24. A.R. 37.

25. A.R. 37.

26. A.R. 3–4.

27. *Leefer v. Administrator,* Civ. No. 627–73 (D.D.C.) (unreported), J. App. 1–3.

28. The defendants, as ultimately designated, were the Administrator of NASA, the Director of Lewis Research Center, and the members of the CSC.

29. *Leefer v. Administrator, supra* note 27 (order of Apr. 24, 1974), J. App. I–1 to I–3.

30. *Id.* at 2, J. App. I–2.

31. *Id.* at 2–3, J. App. I–2 to I–3.

their employees.[32] The courts accord agencies "wide discretion in exercising this authority."[33] Judicial review of such exercises is narrowly limited:[34]

> Discretion primarily lies in the hands of the administrative agencies involved, and the courts will not substitute their own judgment for that of the agency's. Review is thus limited to whether the agency denied the employee his appropriate procedural rights and whether the decision to remove the employee was arbitrary and capricious.[35]

Whatever the conclusion judges might reach were the decision theirs alone, they must defer to an administrative determination adequately supported.[36]

We see no infringement of Leefer's procedural rights at the administrative level. To be sure, as he points out, there was no evidentiary hearing, but in his circumstances he was entitled to none. Under civil service regulations, an employee is afforded a hearing and other procedural safeguards when faced with an "adverse action."[37] The "adverse action" procedures are available, however, only in specified situations.[38] Their only potential application to Leefer

lay in his claim that the reassignment lowered his rank.[39] That contention ultimately fell through, and with it the foundation for Leefer's bid for a hearing. In other words, there was no hearing because Leefer could not make the threshold showing of reduction in rank.

▆▆▆ As the Seventh Circuit has observed, the adverse-action regulations do not state "how and by whom it is to be decided whether a given action constitutes one of the 'adverse actions' to which the regulations apply."[40] Courts traditionally defer to an agency's interpretation of its own regulations; when their meaning is doubtful, "the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation."[41] We are unable to say that the governing regulations were dishonored here.[42]

Leefer asserted administratively that his reassignment was an adverse personnel action because, he said, it involved a reduction in rank. NASA's Director of Personnel made a comparison of Leefer's positions before and after the transfer,[43] and could

---

**32.** See 5 C.F.R. § 335.102 (1974).

**33.** *Comberiate v. United States*, 203 Ct.Cl. 285, 288 (1973). See also *Urbina v. United States*, 428 F.2d 1280, 1284, 192 Ct.Cl. 875 (1970).

**34.** As we have had occasion to state, "judicial review of civil service firings"—and we might add, reductions in rank—"should be governed by the principles generally applicable to judicial review of administrative action." *Gueory v. Hampton*, 167 U.S.App.D.C. 1, 4, 510 F.2d 1222, 1225 (1974). See also *Polcover v. Secretary of Treasury*, 155 U.S.App.D.C. 338, 477 F.2d 1223, *cert. denied*, 414 U.S. 1001, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973); *Scott v. Macy*, 131 U.S.App.D.C. 93, 96 n.6, 402 F.2d 644, 647 n.6 (1968).

**35.** *Gueory v. Hampton, supra* note 34, 167 U.S.App.D.C. at 4, 510 F.2d at 1225. *Accord, Studemeyer v. Macy*, 116 U.S.App.D.C. 120, 121, 321 F.2d 386, 387, *cert. denied*, 375 U.S. 934, 84 S.Ct. 337, 11 L.Ed.2d 265 (1963); *Pelicone v. Hodges*, 116 U.S.App.D.C. 32, 33, 320 F.2d 754, 755 (1963).

**36.** *E. g., Moore v. Administrator*, 155 U.S.App.D.C. 14, 17, 475 F.2d 1283, 1286 (1973); *Halsey*

*v. Nitze*, 390 F.2d 142, 144–145 (4th Cir.), *cert. denied*, 392 U.S. 939, 88 S.Ct. 2316, 20 L.Ed.2d 1399 (1968).

**37.** 5 C.F.R. §§ 752.202 *et seq.* (1974).

**38.** 5 C.F.R. § 752.201(b) (1974), quoted *supra* note 4.

**39.** 5 C.F.R. § 752.201(b)(4) (1974).

**40.** *Pauley v. United States*, 419 F.2d 1061, 1065 (7th Cir. 1969).

**41.** *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700, 1702 (1945). *Accord, INS v. Stanisic*, 395 U.S. 62, 72, 89 S.Ct. 1519, 1526, 23 L.Ed.2d 101, 109 (1969); *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, 625 (1965); *Gueory v. Hampton, supra note* 34, 167 U.S.App.D.C. at 4, 510 F.2d at 1225.

**42.** Compare *Pauley v. United States, supra* note 40, 419 F.2d at 1065–1066.

**43.** This method of comparison was found necessary because NASA's organizations were

find no reliable indication that his new post was subordinate to the old [44]—an evaluation entitled to "great weight." [45] The CSC's Regional Office, upon examination of the evidence, reached the same result,[46] a holding which the Board of Appeals and Review affirmed with but minor refinements.[47] At each decisional stage of the administrative process, it was recognized that Leefer's reassignment did not fall within the usual categories of reduction of rank, and that NASA's Washington and Cleveland units were so differently constituted that there was no satisfactory basis for determining the relative rank of the two jobs in question.[48] In each instance, it was concluded that the evidence did not show an adverse personnel action because it could not support a finding that the positions were not equivalent in rank.[49] By our assessment, the record posed no genuine issue of fact material to resolution of the crucial question of decisional rationality,[50] and summary judgment of dismissal was entirely in order.

■ Leefer argues, however, that the District Court erred in confining its consideration of the case to the administrative record.[51] We cannot agree. De novo review of administrative action is appropriate only "when the action is adjudicatory in nature and the agency factfinding procedures are inadequate," [52] or "when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action." [53] Neither of these situations was presented here. It follows that the court properly rested its decision on the record as made before the agency under review.

## III

■ Leefer's final contention is that the District Court erroneously dismissed his lawsuit without inquiry into his charge that his transfer from Washington to Cleveland was the product of discrimination. However, as in recent times we have had occasion to remind, "[i]t is well settled that resort to the judicial process must ordinarily be postponed until administrative remedies capable of rectifying claimed error have been pursued to finality." [54] We perceive nothing that would exempt Leefer

structured differently, making a direct comparison of titles unsatisfactory. See text *supra* at notes 7–9.

44. See text *supra* at note 10.

45. "The NASA Administrator's assessment of the comparative equality of employee positions within his own agency must be given great weight. This conclusion seems inescapable if the principle that agencies have wide discretion in exercising their reassignment authority is to have any meaning. Plaintiff's burden in proving abuse of discretion is a heavy one. . ." *Comberiate v. United States, supra* note 33, 203 Ct.Cl. at 289.

46. See text *supra* at notes 13–19.

47. See text *supra* at notes 20–26.

48. See text *supra* at notes 2–26.

49. See text *supra* at notes 2–26.

50. See text *supra* at notes 32–36, 40–42.

51. In like vein, Leefer argues that the District Court erred in granting the Administrator's motion for a stay of discovery pending disposition of the latter's motion to dismiss. Discovery

could have served a useful purpose, only in the event and to the extent that de novo review of CSC's decision was in order, something which Leefer's effort to obtain discovery seemingly assumed. For reasons stated in text, we sustain the ruling in this regard.

52. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136, 153 (1971). *Accord, Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106, 111 (1973); *United States v. Carlo Bianchi & Co.,* 373 U.S. 709, 714–715, 83 S.Ct. 1409, 1413, 10 L.Ed.2d 652, 657–658 (1963); *National Broadcasting Co. v. United States,* 319 U.S. 190, 227, 63 S.Ct. 997, 1014, 87 L.Ed. 1344, 1368 (1943).

53. *Citizens to Preserve Overton Park v. Volpe, supra* note 52, 401 U.S. at 415, 91 S.Ct. at 823, 28 L.Ed.2d at 153. See also cases cited *supra* note 52.

54. *Wallace v. Lynn,* 165 U.S.App.D.C. 363, 366, 507 F.2d 1186, 1189 (1974) (footnote omitted). *Accord, FCC v. Schreiber,* 381 U.S. 279, 296–297, 85 S.Ct. 1459, 1470–1471, 14 L.Ed.2d 383, 395 (1965); *Sohm v. Fowler,* 124 U.S.App.D.C. 282, 284–285, 365 F.2d 915, 917–918 (1966).

from the normal requirement [55] that he exhaust his opportunities for administrative remediation before bringing his discrimination claim into court.

Close examination of the administrative record reveals that Leefer articulated suspicions of discrimination in his written submission to the Board of Appeals and Review, and outlined therein his fear of reprisal for challenging the reassignment. Nonetheless, as Leefer traveled through the administrative process he consistently tailored his presentation to the pervasive theme that his reassignment was a reduction in rank. There was a procedure by which Leefer might have pressed his charge of discrimination administratively,[56] but the fact is that he did not see fit to pursue it. As the matter stood, the District Court had before it only the "adverse action" litigation.

The judgment appealed from is accordingly

*Affirmed.*

---

**55.** There are exceptions to the general rule, but none applicable to the case at bar.

**56.** 5 C.F.R. §§ 771.301 *et seq.* (1974).