**HUBBARD BROADCASTING, INC., Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee, American Broadcasting Companies, Inc., Intervenor.**

**No. 79–1549.**

United States Court of Appeals, District of Columbia Circuit.

Dec. 29, 1980.

Daniel M. Armstrong, Associate Gen. Counsel and Keith H. Fagan, Washington, D. C., counsel were on the appellee's motion for summary affirmance.

Frank U. Fletcher, Marvin Rosenberg and Robert L. Pettit, Washington, D. C., were on appellant's response in opposition to motion for summary affirmance.

Before WRIGHT, Chief Judge, ROBINSON and MacKINNON, Circuit Judges.

Opinion for the Court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge:

The Federal Communications Commission (FCC) moves for summary affirmance of two orders that preclude Hubbard Broadcasting, Inc. (Hubbard) from operating Station KOB, 770 kilohertz (kHz) in Albuquerque, New Mexico, as a Class I–A radio broadcast facility. The orders are (1) a *By Direction Letter* (2 November 1978), 44 RR 2d 1005 (1979), dismissing Hubbard's proposed amendment to its application for class II–A status that would have specified Class I–A operation; and (2) a *Memorandum Opinion and Order* (27 April 1979), 45 RR 2d 780 (1979), that granted Hubbard's application for Class II–A operation, that reconsidered and again dismissed the above mentioned amendment, and that affirmed the grant of the renewal application of American Broadcasting Company, Inc. (ABC) for Class I–A operation of Station WABC, 770 kHz out of New York, New York. The FCC rejected Hubbard's application for Class I–A status because it conflicted with 47 C.F.R. § 73.22(a) (1979), which the Commission interpreted as providing for a Class I–A station on 770 kHz in New York and a Class II–A station in New Mexico. Because this case presents a classic example of a situation where the merits of a claim "so clearly warranted relief as to justify expedited action", *United States v. Allen*, 408 F.2d 1287, 1288 (D.C.Cir.1969), we grant the FCC's motion for summary affirmance.

The orders under attack represent the Commission's latest effort to resolve a dispute between Hubbard and ABC which has been before this Court and the FCC since 1941, when KOB was temporarily assigned to the 770 kHz frequency. This assignment resulted in both KOB and WABC operating on the same frequency. KOB's service at that time was nondirectional, however, and tended to interfere considerably with WABC's signal from New York. In 1950, the FCC continued KOB's operation on 770 kHz on an interim basis, a ruling which WABC appealed to this Court. We decided that the FCC had to try and resolve the competing stations' problem, and remanded the case to the agency. *American Broadcasting Co., Inc. v. FCC,* 191 F.2d 492 (D.C. Cir.1951). Again in 1956 WABC complained that the infringement from KOB was continuing. This Court ordered the FCC to take prompt and effective steps to relieve the illegal impingement upon WABC's license until a decision could be made in the then pending clear channel rulemaking proceedings or the proceedings to determine the permanent status of KOB. On the basis of this order, the FCC ordered KOB to directionalize its nighttime operation on 770 kHz to protect WABC's non-directional broadcasting. The effect of this ruling was to treat KOB as a Class II station on that channel, while keeping WABC the dominant Class I station.

In 1958, the FCC considered the status of KOB in depth. In a new order the FCC ruled that both WABC and KOB were to directionalize their nighttime operations to protect the other's station from interference. 25 F.C.C. 683 (1958). Both stations were given a Class I–B status at that time. We affirmed that ruling with the reservation that WABC should not be permanently prejudiced as a network by forcing it to share a channel if other networks (WNBC and WCBS) were given full use of clear channels. "In other words, the Commission should seek to provide channel facilities to the ABC network on a basis which is fair and equitable in comparison with other networks." *American Broadcasting-Paramount Theatres, Inc. v. FCC,* 280 F.2d 631,

635 (D.C.Cir.1960). Our decision did not, however, prescribe the means by which the FCC should accomplish this task.

In 1963, the FCC again affirmed the Class I–B status for both WABC and KOB, primarily because WABC had not shown that it would be at a competitive disadvantage with the other networks. By this ruling, both WABC and KOB were to continue their nighttime directional operations. *Hubbard Broadcasting, Inc.,* 35 F.C.C. 36 (1963). WABC appealed this ruling to this Court, and the Court again addressed the issues of fairness to WABC. *American Broadcasting-Paramount Theatres, Inc. v. FCC,* 345 F.2d 954 (D.C.Cir.1965). Noting primarily that the inequity to WABC as a flagship station was apparent, the Court found that whether WABC had proved a competitive disadvantage was irrelevant since the Court's 1960 opinion had required comparable channel facilities for all networks. Thus we reversed the FCC's 1963 ruling and remanded the case to the agency which then decided to resolve the issues through rulemaking rather than adjudication. *Hubbard Broadcasting, Inc.,* 4 F.C.C.2d 606 (1966). The notice of rulemaking proposed to amend § 73.22 and § 73.25 of the FCC rules to classify KOB as a fulltime Class II–A station on 770 kHz in New Mexico.

In the *1976 Report and Order* that resulted from this rulemaking, the FCC reiterated the issue of the 1965 remand order from this Court:

> [T]he issue of channel equality for WABC vis-a-vis the other network "flagship" stations in New York and the extent to which KOB's nighttime mode of operation would destroy that equality. Because of the manner in which the remand order was drawn, our *Notice* in this proceeding sought only to define the *permanent relationship* between WABC and KOB.

59 F.C.C.2d at 40. (Emphasis added).

The agency concluded that the best solution to this longstanding problem was to specify Class II–A status for KOB, re-

turning it to essentially the same nighttime mode of operation as observed between 1957 and 1963. *Id.* at 42. Noting that the FCC's earlier attempts to settle the KOB problem had resulted in four appeals to this Court, and three major proceedings before the agency, it concluded that the "public interest now demands that it be brought to a conclusion." *Id.* at 45. The concern of clear channel protection from co-channel interference was declared to be resolved in a manner viewed by the agency as fair, equitable and serving the public interest.

The *1976 Report and Order* also amended § 73.22(a) to read as follows:

§ 73.22 Assignment of Class II–A stations.

(a) Table of assignments. One Class II–A station may be assigned on each channel listed in the following table within the designated State or States:

| Channel (kHz) | Location of existing Class I station | State(s) in which Class II–A assignment may be applied for |
|---|---|---|
| | * * * * * | |
| 770 | New York, N.Y. | New Mexico. |
| | * * * * * | |

59 F.C.C.2d at 46–47.

In 1978, Hubbard applied for Class I–A status on 770 kHz for KOB. In subsequent proceedings before the FCC Hubbard asserted that the 1976 Report and Order had done no more than establish that there should be only one Class I station on 770 kHz, and had merely required KOB to become a Class II–A operation for the remaining portion of the then current license term. Hubbard claimed that it was still open to question whether the 770 kHz frequency would be used in the future for a Class I station in New York or in Albuquerque. Accordingly, Hubbard argued that it was entitled to apply for Class I–A use of the frequency, and that the FCC was required to designate its application and that of WABC for a comparative hearing under *Ashbacker Radio Corp. v. FCC,* 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945).

The FCC dismissed Hubbard's application for Class I–A status in a *By Direction Letter* (2 November 1978), 44 RR 2d 1005 (1979), on the ground that it was in "patent violation" of the amended § 73.22(a). In the subsequent Memorandum Opinion and Order (27 April 1979), 45 RR 2d 780 (1979), the FCC then granted Hubbard's application for Class II–A operation, and affirmed the grant of Class I–A authority to WABC. It explained that the 1976 Report and Order and the amendment to § 73.22 were the result of detailed rulemaking, and constituted an "integral part of our AM allocations scheme." 45 RR 2d at 781. Thus, the agency stated that it was not required to relitigate matters decided in rulemaking, and concluded that the only way that Hubbard could receive any favorable action would be to seek a waiver of the regulation, which it had failed to do. The instant appeal and motion for summary affirmance followed.

II.

The standard of review in cases such as this was explained clearly in *Belco Petroleum Corp. v. FERC,* 589 F.2d 680, 685 (D.C. Cir.1978):

Where construction of an agency regulation is in issue, courts owe great deference to the interpretation adopted by the agency and will uphold the interpretation if it is reasonable and consistent with the regulation. The court need not find that the agency's construction is the only possible one, or even the one that the court would have adopted in the first instance.[1]

1. Both the Supreme Court and this Court have consistently applied the rule of deferring to an agency's interpretation of its own rules and regulations. In *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945), the Court stated:

since this involves an interpretation of an administrative regulation a court must necessarily look to the administrative construction if the meaning of the words used is in doubt. . . . [T]he ultimate criterion is the interpretation, which becomes *of controlling weight* unless it is plainly erroneous or inconsistent with the regulation.

*Id.* at 414, 65 S.Ct. at 1217 (Emphasis added). *See also United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977); *Udall v. Tallman,* 380 U.S. 1, 16–17, 85

Although Hubbard opposes the motion for summary affirmance on the grounds that the FCC's interpretation of its regulation is "clearly erroneous", we have no trouble concluding that the FCC's interpretation of § 73.22(a) is reasonable and consistent with the long and laborious history of its rulemaking. The record contains almost forty years of agency and judicial attempts to resolve the two predominant issues once again before this Court—how to permit the two stations to both operate on 770 kHz, and how to allocate fair treatment to WABC as a network flagship station. Finally the FCC arrived at a solution it describes as "permanent" both in the *1976 Report and Order*, and in the instant case. It was consistent and reasonable for the FCC to interpret its regulation as being just that.

What the *1976 Report and Order* did was to assign the location of the *"existing"* Class I clear channel on 770 kHz to New York City. It also allowed KOB to apply for a Class II–A assignment in New Mexico. For Hubbard to now request Class I status on 770 kHz in *New Mexico*, when it concedes that only one Class I station may operate on 770 kHz and when § 73.22 clearly confines that station to "New York", flies directly into the face of what our previous decisions had directed the FCC to do and of what the FCC intended to do— namely, to place WABC on a comparable clear channel basis with WNBC and WCBS. The solution embodied in § 73.22 is in no way restricted to one license term; therefore, the station allocation thereby made should be maintained until a waiver is granted or the rule is amended.[2]

S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Leefer v. Administrator, NASA*, 543 F.2d 209, 213 (D.C. Cir.1976) ("Courts traditionally defer to an agency's interpretation of its own regulations. . . .").

2. Hubbard also contends that the Commission's *1980 Report and Order*, 78 F.C.C.2d 1345, represents an inconsistent stand on its breakdown of AM clear channel facilities and therefore that it provides an independent basis for denial of the Commission's motion for summary affirmance. The argument is that the assignment by rulemaking of a Class I–A station on 770 kHz to New York City is inconsistent both with

### III.

We thus conclude that the FCC's interpretation of 47 C.F.R. § 73.22 is completely reasonable and consistent with the regulation. Accordingly, its motion for summary affirmance is granted, and this forty year old controversy is finally brought to an end.

*Judgment accordingly.*

the Commission's normal practice of AM station assignment through adjudicatory proceedings, and with the *1980 Report and Order's* contemplated establishment of additional Class II stations on clear channels—including 770 kHz—by use of a demand system. We see no reason why the Commission may not, in the exercise of its regulatory authority and discretion, choose to except clear channel breakdowns from its general practice of AM station assignment by adjudication, particularly given the unique problems that obtain in the clear channel context.