Dewey F. MEADOWS, Appellant,

v.

James PALMER, Director, Department of Corrections, et al.

No. 84–5676.

United States Court of Appeals, District of Columbia Circuit.

Argued May 15, 1985.

Decided Nov. 5, 1985.

Jean C. Godwin, Washington, D.C., for appellant. Keith A. Rosenberg, Washington, D.C., was on the brief, for appellant.

Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., for the District of Columbia, with whom John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel for the District of Columbia, Washington, D.C., were on the brief, for appellees.

Before MIKVA, BORK and STARR, Circuit Judges.

Opinion for the Court in Parts I–III filed by Circuit Judge MIKVA.

Opinion for the Court in Part IV filed by Circuit Judge BORK.

Dissent from Part IV filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

This case raises questions regarding the jurisdiction of the now extinct Civil Service Commission ("CSC"). On July 5, 1977, Dewey Meadows, a longtime employee of the District of Columbia, was detailed from his position as Chief of the Office of Automatic Data Processing ("ADP") for the Department of Corrections to a position in the Department of Corrections' Office of Resource Management. Following the expiration of the detail, Meadows was ultimately reassigned to the Project Implementation Staff ("PIS") of the Department of Corrections as a Computer Systems Analyst.

Meadows appealed both the detail and the reassignment to the Civil Service Commission. In separate opinions, the CSC determined that it lacked jurisdiction over both appeals: the detail did not constitute an "employment practice," and the reassignment did not constitute a "reduction in rank." The CSC's determinations were appealed to the District Court, which granted summary judgment for appellees.

For the reasons discussed below, we affirm the District Court's grants of summary judgment.

I.

At the time this case began in 1977, Meadows had been a government employee

for over nineteen years. From 1968 to 1978, he served as the chief of ADP. According to Meadows, efforts began in 1977 to remove him from office or to coerce him into resigning. Two personnel actions were undertaken by Meadows' then-superiors at the Department of Corrections. The first personnel action at issue was a detail within the District of Columbia Department of Corrections from ADP to the Office of Resource Management. A detail is a temporary transfer of an employee from one department to another and is permitted under certain circumstances if procedural requirements, primarily concerning notice, are met.

Under the detail, which began on July 5, 1977, Meadows was to determine analytical requirements and functions of the District of Columbia Department of Personnel. Throughout the detail, Meadows was provided neither staff nor clerical assistance. Meadows appealed the detail to the CSC and filed a grievance with the Department of Corrections, alleging that the detail was procedurally defective and that, because there was no work for Meadows to perform, the detail lacked a proper purpose.

On October 31, 1977, about the time Meadows' detail was to expire, Meadows received notice that he had been reassigned to the PIS as a Computer Systems Analyst, effective November 2, 1977. At the same time, appellees began formal efforts to remove Meadows from the position of chief of ADP. As a result of these actions, Meadows filed suit in D.C.Superior Court (Civil Action No. 11265–77), seeking to enjoin the Department of Corrections from removing him from that position. Subsequently, the reassignment was rescinded, rendering the suit for injunctive relief moot. Meadows' detail was thereafter extended until March 4, 1978.

On January 18, 1978, the District of Columbia denied Meadows' grievance. On March 24, 1978, the CSC dismissed Meadows' appeal of the detail, on the grounds that it did not constitute an employment practice subject to review under Civil Service Regulations.

Upon expiration of the extended detail, Meadows returned to his position as Chief of ADP, where he remained for approximately two and a half weeks. On March 20, 1978, the Notice of Proposed Removal was rescinded and Meadows was simultaneously reassigned to the PIS as a Correctional Programs Systems Coordinator. Meadows appealed the reassignment to the CSC on the basis that it constituted an unlawful reduction in rank. On October 23, 1978 the CSC denied Meadows' appeal, concluding that the reassignment did not constitute a reduction in rank because Meadows' relative standing in the hierarchy of the agency remained unchanged following the reassignment, and he had not been lowered in numerical grade, class or level. Accordingly, the reassignment did not fall within the limited area of "adverse action," and the CSC therefore lacked jurisdiction over the appeal.

Meadows again filed suit in D.C.Superior Court challenging the CSC's disposition as to both the detail and the reassignment. The Superior Court dismissed the complaint, finding that exclusive jurisdiction rested in federal court. Meadows' appealed the dismissal to the District of Columbia Court of Appeals, which on November 24, 1981 affirmed the decision of the Superior Court. *Meadows v. Jackson,* D.C.App. No. 81–163 (Nov. 24, 1981). Just before the D.C. Court of Appeals affirmed the reassignment, Meadows was transferred to the Department of Employee Services of the District of Columbia for an indefinite period of time. Meadows continues in that position today and has never challenged that transfer.

On March 29, 1983, Meadows filed a challenge to the CSC's decisions on the detail and the reassignment in the U.S. District Court. The District Court issued separate opinions on each of the personnel decisions, both of which are appealed here. In the first, the District Court granted appellees' motion for summary judgment as to the reassignment, holding that the CSC's decision on this matter was not arbitrary, capricious, an abuse of discretion, or contrary to

law. In the second, the District Court granted appellees' motion for summary judgment as to the detail.

## II.

At the outset, it is helpful to delineate what laws we construe here and the path by which this appeal came to us. While no questions of jurisdiction present themselves, changes in the substantive and procedural laws governing government employees have created a veritable morass. The first change was the removal of District of Columbia employees from the federal personnel system, as part of the movement to confer home rule on the District of Columbia. The second change was the reform of the laws governing federal personnel. Implementation of home rule and the reform of the Civil Service system overlapped, giving rise to the confusion we confront today. Before reviewing the substance of this appeal, then, it is useful to specify what substantive law controls and through what procedural channels employee appeals travel in the period of time beginning in 1977 to the present day.

At the time the actions complained of in this case occurred, competitive service employees in the District of Columbia government operated under the federal personnel system. *See* Federal Personnel Manual ("FPM"), ch. 212, subch. 1–3(d) (1979). *See also* D.C.Code §§ 3–105, 24–443 (1973). Employees were entitled to appeal adverse actions, including reductions in rank, to the Civil Service Commission pursuant to 5 U.S.C. §§ 7512 & 7513(d) (1976). Under 5 U.S.C. §§ 701–706 (1976), review of decisions of the CSC was in a federal district court. When the CSC went out of existence as a result of the federal reform law in 1978, the MSPB inherited the outstanding caseload. *See* Reorganization Plan No. 2 of 1978 at § 203, 43 Fed.Reg. 36037, 92 Stat. 3783, 3785 (1978). This procedural route controls the instant action.

District of Columbia employees are no longer governed by the federal personnel system. Under the District of Columbia Self-Government and Governmental Reor-

ganization (Home Rule) Act, Congress conferred authority on the District of Columbia to create its own personnel system. *See* Pub.L. No. 93–198, § 422(3), 87 Stat. 774, 791 (1973). Accordingly, when the Civil Service Reform Act of 1978 ("CSRA") was passed (codified in scattered sections of 5 U.S.C.), Congress deleted most references to the District of Columbia employees and, for the most part, they were not thereafter covered by the federal personnel system. The District of Columbia then enacted its own personnel system which provides for appeals to be taken to the District of Columbia's Office of Employee Appeals, and from there to the D.C.Superior Court. *See* Comprehensive Merit Personnel Act, D.C.Code § 1.606.3(a) & (d) (1981). For District of Columbia employees, reductions in rank that are implemented today do not constitute adverse actions. *Cf.* D.C.Code § 1–617.1(e) (1981) (adverse action requires reduction in grade or pay).

The MSPB, created under the CSRA, had a limited involvement with D.C. employees in the period following January 1, 1979, when the District of Columbia's own personnel system was implemented. During that interim period, a contract between the District of Columbia and the MSPB provided for appeals by competitive service employees of the District of Columbia government from adverse personnel actions to the MSPB. *See* 5 U.S.C. §§ 7511(a)(1)(A) & 7701 (Supp. V 1978). *See also District of Columbia v. MSPB*, 762 F.2d 129, 130–31 (D.C.Cir.1985).

Federal employees who claim to have suffered from adverse actions that occurred following the effective date of the CSRA may take appeals to the Merit Systems Protection Board, *see* 5 U.S.C. § 7701 (1982), and from there to the Court of Appeals for the Federal Circuit. *See* 5 U.S.C. § 7703 (1982). For these employees, a reduction in rank is not an adverse action, and accordingly, is not reviewable. *See Manning v. MSPB*, 742 F.2d 1424, 1427 n. 5 (Fed.Cir.1984).

Today, then, District of Columbia employees are governed by their own person-

nel system, the Civil Service Commission has been dissolved, and reductions in rank are not considered adverse actions. None of this affects our review, however, because we measure the validity of Meadows' detail and reassignment against the laws in operation at the time those events occurred. The CSRA contains a savings clause which makes both the substance and procedure of that Act inapplicable to proceedings instituted before its effective date:

No provision of this Act shall affect any administrative proceedings pending at the time such provision takes effect. Orders shall be issued in such proceedings and appeals shall be taken therefrom as if this Act had not been enacted.

Pub.L. No. 95–454 § 902(b), 92 Stat. 1111 (5 USC § 1101 note (1982)). Under regulations promulgated by the Merit Systems Protection Board, a proceeding is "pending" once the employee has received notice of the proposed action. *See* 5 C.F.R. § 1201.191(b).

■ In the instant case, Meadows received notice of the proposed personnel action before the MSPB came into being. Under the MSPB's interpretation of the savings clause, the proceedings were thus pending when the Act became effective, and must therefore be reviewed under prior law.

In *Kyle v. ICC,* 609 F.2d 540 (D.C.Cir. 1979) (*per curiam* ), this court upheld the validity of the MSPB's regulations, finding it consistent with the language of the savings clause. Moreover, the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong. *See Miller v. Youakim,* 440 U.S. 125, 144, 99 S.Ct. 957, 968, 59 L.Ed.2d 194 (1979). The MSPB regulation accomplishes the purpose of the savings clause: to ensure that all personnel actions initiated prior to January 11, 1979 are decided under prior law. Accordingly, we assess the personnel actions complained of here under the law governing competitive service employees prior to the enactment of the CSRA. *See*

*Fucik v. United States,* 655 F.2d 1089, 228 Cl.Ct. 379 (1981).

### III.

■ Our scope of review in civilian employee cases is well settled. We will set aside an agency's action only if it is found to be arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, without a rational basis, contrary to law, or not in substantial compliance with procedural regulations. *Summers v. United States,* 648 F.2d 1324, 227 Ct.Cl. 353 (1981); *Boyle v. United States,* 515 F.2d 1397, 207 Ct.Cl. 27 (1975).

■ In appealing his detail to the CSC, Meadows contended that the detail served no useful purpose. A detail is "intended only for meeting temporary needs of the Agency's work program when necessary services cannot be obtained by other desirable or practical means." FPM, Ch. 300–19, Subch. 8–3(a). Under the regulations of the Department of Corrections then in effect, "details may be appropriately used to meet emergencies, abnormal work loads, unanticipated absences, or to complete special projects." Dep't of Corrections Order 3110.1A, ¶ 14(a) (July 31, 1973). In addition, certain procedural requirements, primarily concerning notice, must be met in implementing a detail. *See* FPM, Ch. 300–19, Subch. 8–3(c). Meadows also contends that these procedures were not followed.

Jurisdiction over appeals was conferred on the CSC under 5 C.F.R. § 300.104(a)(1) (1978) which states:

A candidate who believes that an employment practice which was applied to him and which is administered or required by the Commission violates a basic requirement in section 300.103 is entitled to appeal to the Commission.

As a threshold matter then, review by the Civil Service Commission was available only where the disputed action constitutes an employment practice. A working definition of employment practice is provided in 5 C.F.R. § 300.101 (1978):

The purpose of this subpart is to establish principles to govern.... the employment practices of the Federal Government generally, and of individual agencies, that affect the recruitment, measurement, ranking, and selection of individuals for initial appointment and competitive promotion.

The CSC found that it did not have jurisdiction over Meadows' appeal of his detail because the detail did not pertain to a selection for initial appointment or promotion and did not otherwise involve an employment practice. While the phrase "employment practice" has been broadly construed to include more than examinations, measurement tools, and qualifications relating directly to merit, *see Dowd v. United States,* 713 F.2d 720, 723 (Fed.Cir.1983), it is nonetheless limited to actions which concern initial selection or promotion. For example, in *Dowd,* the court held that time-in-grade restrictions, which prohibit agencies from promoting employees who have not served one year at the next lower grade, constitute employment practices even though time-in-grade restrictions do not fall within the precise words of the controlling regulations. Time-in-grade restrictions do directly affect promotions, and therefore, the CSC may review the applications of such restrictions.

A detail in contrast, is a limited assignment which is appropriate "to meet emergencies, abnormal workloads, unanticipated absences, or to complete special projects." Department of Corrections Order 3110.1A, ¶ 14(a) (July 31, 1973). By virtue of their ephemeral nature and limited purpose, details rarely pertain to initial selection or to promotion.

We affirm the District Court's grant of summary judgment for appellees as to the detail, as we agree that the CSC's determination on the record before it was not arbitrary, capricious or an abuse of discretion and was in accordance with law. Here, Meadows has not made an adequate showing that his detail affected his opportunity for promotion or advancement. The detail, therefore, did not constitute an employment practice and the CSC lacked jurisdiction to review the detail.

## IV.

BORK, Circuit Judge:

Meadows also appealed his reassignment to the Civil Service Commission, alleging that it constituted a reduction in rank. A reduction in rank, under the regulations in effect at the time of the reassignment, constituted an adverse action and, as such, was reviewable. 5 C.F.R. § 752.201(b)(4) (1977). Such action could not be taken without providing the employee with notice and certain administrative remedies before the adverse action is taken. 5 C.F.R. § 752.202 (1977).

■ In general, where adverse actions are taken by agencies without providing adverse action procedures, the actions are unlawful and may be set aside. *See Fucik v. United States,* 655 F.2d 1089, 1093, 228 Ct.Cl. 379 (1981); *Summers v. United States,* 648 F.2d 1324, 1327, 227 Ct.Cl. 353 (1981). Meadows was not provided with adverse action procedures in connection with his reassignment; thus the only question here is whether the reassignment constituted a reduction in rank.

■ By definition, reassignments do not generally result in reductions in rank. A reassignment is "a change of an employee, while serving continuously within the same agency, from one position to another without promotion or demotion." FPM, ch. 210, subch. 1–1b(21) (1973). Civil Service Commission regulations "confer broad authority upon federal agencies to reassign their employees. The courts accord agencies 'wide discretion in exercising this authority' [and] [j]udicial review of such exercises is narrowly limited." *Leefer v. Administrator, NASA,* 543 F.2d 209, 212–13 (D.C.Cir. 1976) (footnotes omitted) (affirming dismissal of suit contesting reassignment since no reduction in rank).

The Federal Personnel Manual provides:
In law and the Commission's regulations, the term rank means something more than a numerical grade, or class, or level

under a classification system or its equivalent in the Federal Wage System. Basically, it means an employee's relative standing in the agency's organizational structure, as determined by his official position assignment.

FPM Supp. 752–1, § S1–4(a) (1976). In other words, to have been reduced in rank, Meadows must have been reduced in his grade or his actual organizational standing. Since Meadows remains a GS–14, the only question is whether his "relative standing in the agency's organizational structure" has been reduced.

Meadows argues that the reassignment resulted in a lowering of his position in the hierarchy of the Department of Corrections. Prior to Meadows' reassignment, he reported to the Assistant Director for Administration, GS–15, who in turn reported to the Director, Department of Corrections, GS–17. After the reassignment, Meadows' levels of supervision remained the same. However, he was also required to coordinate his assignments with the Chief, Office of Resource Management, a fellow GS–14. Meadows asserts that the coordination requirement means that Meadows now reports to a GS–14 employee, effectively lowering his position in the hierarchy. The CSC found that the coordination requirement does not alter Meadows' position in the hierarchy. This finding is well within the CSC's discretion, and we find no basis for disturbing it here.

Meadows also argues that the position to which he was reassigned was a "sham position," causing a *de facto* reduction in rank. He cites *Fucik v. United States*, 655 F.2d 1089, 1093, 228 Ct.Cl. 379 (1981), for the proposition that an employee can suffer a reduction in rank even where the employee's numerical grade and position on the organizational ladder remain unchanged. This reasoning is contrary to the pertinent regulation and would involve courts in deciding the appropriate grades for particular jobs. We think it better not to follow that course.

As has already been shown, FPM Supp. 752–1, § S1–4(a) provides only objective determinants of rank—(1) numerical grade, and (2) actual organizational standing. Meadows fails to show an adverse action as to either. We have already stated that this numerical grade has not changed. Meadows' only other arguments are that (1) "Plaintiff had absolutely no staff or secretarial assistance in this position," Brief of Appellant at 22, (2) the statement that "Plaintiff [only] 'coordinates' his work with the Chief, Resource Management [a fellow GS–14], ... was nothing but a subterfuge for the fact that Plaintiff no longer reported directly to the Assistant Director for Administration ..., a GS–15," *id.* at 22–23, and (3) "Plaintiff had no meaningful work to do as a result of his reassignment," *id.* at 23. The Commission properly found that, under agency regulations, the factors in the first argument are not indicia of rank. *See* FPM Supp. 752–1, § S1–4(c). Our opinion has already found the second point to be without merit. And, whether the appellant has meaningful work to do has no bearing on the objective status of Meadows' grade level or "relative standing in the agency's *organizational structure*" (emphasis added). Indeed, Meadows makes his sham arguments not to show that his actual grade or position in the organizational structure was changed, but to show that the reassignment lacked a proper purpose and was done "in an effort to force the employee from employment." Brief of Appellant at 21; Joint Appendix at 15–18. These arguments belong with other issues already decided.

We find that the Commission adequately answered all the issues raised by Meadows and therefore affirm the grant of summary judgment as to the reassignment issue.

## V. CONCLUSION

We hereby affirm the District Court's grants of summary judgment as to both the detail and the reassignment.

*It is so ordered.*

MIKVA, Circuit Judge, dissenting from Part IV:

I dissent from the majority's holding in Part IV that an employee never suffers a

reduction in rank as long as the employee's numerical grade and formal position in the organizational ladder remain unchanged. The court acknowledges *Fucik's* holding, 655 F.2d at 1093, that "relative standing in the agency's organizational structure" may be adversely affected even when the description or grade of the position remains unchanged. Yet the Court simply declines, without explanation, to follow *Fucik.* In dismissing *Fucik's* reasoning as contrary to the Federal Personnel Manual's definition of rank, the Court ignores the fact that *Fucik* is a closely reasoned interpretation of the meaning of that very definition of rank. The definition is given in FPM, Ch. 752.1:

> In law and the Commission's regulations, the term rank means something more than a numerical grade, or class, or level under a classification system or its equivalent in the Federal Wage System. Basically, it means an employee's relative standing in the agency's organizational structure, as determined by his official position assignment.

(FPM Chapter 752 was completely revised on September 17, 1980. *See* FPM Letter 752–11. We rely, of course, on the regulation in effect at the time of Meadows' reassignment.)

In determining whether an agency's action results in a reduction in rank, the language of the FPM thus instructs the CSC to examine the actual position held by an employee, rather than relying on the description or grade of the position. *See Fucik,* 655 F.2d at 1094 & n. 7. As the Court of Claims found in *Fucik, id.* at 1094, if the position to which an employee has been reassigned is overgraded, then the "transfer would be an instance of reduction in rank without reduction in grade." *Id. Cf. Leefer v. Administrator, NASA,* 543 F.2d 209, 211–12 (D.C.Cir.1976) (this Court upheld CSC's determination of no reduction in rank where CSC compared functions of position initially held by employee with position to which employee was reassigned.) The CSC failed to conduct this examination, although Meadows clearly raised the issue.

Meadows' argument is that the position to which he was reassigned was overgraded, causing a *de facto* reduction in his relative rank. As measured by responsibility and job description, Meadows argues, his job was lower in rank than other positions which were at the same nominal grade. Meadows asserts that he had no real work to perform in his new position, that the position was essentially a sham position designed to remove him from his position as Chief of ADP, and that the position description was inaccurate. Since it is undisputed that Meadows' numerical grade remained at the GS–14 level throughout the period in question, the CSC relied on that constancy of Meadows' GS–14 status, as well as his unchanged hierarchical position, in determining that the reassignment did not constitute a reduction in rank and therefore left the CSC without jurisdiction to consider Meadows' appeal. In so doing, the CSC misconstrued its mandate under the FPM to examine an employee's actual position, as opposed to the description or numerical rank of a position, in determining whether a reduction in rank has occurred. To ignore the substance of an employee's assignment is to glorify titles and totally disregard the realities of a professional's workplace. Is a judge who is assigned to count boxes still a judge just because he is called a judge? Does a supervisor maintain his rank when all he is assigned to supervise are blank walls? The majority's diffidence to *Fucik* promotes a mischievous doctrine that can erode the whole concept of civil service. The CSC here failed to examine the functions of the position to which Meadows was reassigned, and therefore failed to provide the full reduction in rank analysis mandated by the regulations and by the philosophy of civil service job protection.

Since I would reverse the District Court's decision of the reassignment, I necessarily also address appellees' assertion that Meadows' appeal is barred by the doctrine of laches. While Meadows pursued his administrative remedies in a timely manner, a period of sixteen months elapsed between

the dismissal of his suit by the D.C. Court of Appeals and the taking of an appeal to the U.S. District Court. Appellees filed a motion to dismiss with the District Court on the basis of, *inter alia,* laches. The District Court denied that motion without making any findings.

Meadows now argues that having failed to cross-appeal on the question of laches, appellees are barred from raising it here. In allowing Meadows to proceed, I would not need to decide whether the question of laches is properly before us. Laches could attach here only upon a finding that Meadows was not diligent in pursuing his administrative and/or judicial remedies and that this lack of diligence prejudiced appellees. *See Coalition for Canyon Preservation v. Bowers,* 632 F.2d 774, 779 (9th Cir.1980). The record does not present sufficient evidence of either of these factors. Moreover, the doctrine of laches is rarely applied in employment cases where the delay is less than eighteen months. *Powell v. Zuckert,* 366 F.2d 634, 636 & n. 1 (D.C.Cir.1966). In light of the sparseness of the record and the length of the delay, I do not think that the District Court exceeded its discretion in denying appellees' motion to dismiss on the basis of laches.

I would reverse the District Court's decision on the reassignment and remand to the District Court with instructions to dispatch the case to the Merit Systems Protection Board to consider whether Meadows' allegations are true and whether his new position was in fact overgraded.