James B. DOWD, Jr., Petitioner,

v.

The UNITED STATES, Respondent.

Appeal No. 83–582.

United States Court of Appeals, Federal Circuit.

Aug. 1, 1983.

---

James E. Maxfield, Washington, D.C., argued, for petitioner.

R. Anthony McCann, Washington, D.C., argued, for respondent. With him on the brief were J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Washington, D.C.

Before MILLER, Circuit Judge, SKELTON, Senior Circuit Judge, and SMITH, Circuit Judge.

EDWARD S. SMITH, Circuit Judge.

Petitioner claims that time-in-grade restrictions were improperly applied to him by the Department of the Army, resulting in its refusal to consider him for a position for which he was otherwise eligible. The Merit Systems Protection Board (board) denied relief on the ground that it lacked jurisdiction of claims arising out of time-in-grade restrictions. We reverse.

Petitioner was a Management Auditor at the GS–7 level with the General Accounting Office, a congressional establishment and so a part of the legislative branch. On July 9, 1980, the Office of Personnel Management (OPM) rated petitioner eligible for a position at the GS–13 or GS–14 level. He then applied for a job as a Supervisory Operations Research Analyst, GS–12, with the Army at Fort Sill, Oklahoma. The Army, however, rated him ineligible for the position because he had not met the time-in-grade restriction of having "served 1 year at the next lower grade." [1]

Time-in-grade restrictions are set out in subpart F of part 300, 5 C.F.R. [2] Generally speaking, these restrictions are a way of avoiding the management problems that would result from overly fast promotion within the work force. [3] The restrictions apply without respect to a person's merit-related qualifications; however, the restrictions are specifically limited in application to the competitive service in the executive branch. Section 300.601, "Applicability," states: [4]

This subpart does not apply:

(1) When the position from which the advancement is made is outside the competitive service and in the legislative or judicial branch; * * *.

It is undisputed that petitioner was in the excepted service in the legislative branch; it is therefore conceded by the Government—and recognized by the board—that the Army plainly erred in rating petitioner

---

1. 5 C.F.R. § 300.602(a) (1983).

2. 5 C.F.R. §§ 300.601–300.605.

3. *See* Supplemental Appropriation Act, 1952, ch. 664, § 1310, 65 Stat. 736, 757 (1951), *re-*printed in 1951 U.S.Code Cong. & Ad.News 767 (codified at 5 U.S.C. § 3101 notes (1976)); *see also* notes 12 and 13 and accompanying text.

4. 5 C.F.R. § 300.601(b)(1).

ineligible under the time-in-grade restrictions. Why, then, was relief not forthcoming?

 It is fundamental that the board's jurisdiction is not plenary. Its jurisdiction is limited by statute and regulation; it has no implied or inherent jurisdiction.[5] The board's statutory jurisdiction is set out at 5 U.S.C. § 7701:[6]

> An employee * * * may submit an appeal to the Merit Systems Protection Board from any action which is appealable to the Board under any law, rule, or regulation. * * *

This appellate jurisdiction is codified in the board regulations, the pertinent part of which provides:[7]

> This appellate jurisdiction includes:
>
> * * * * * *
>
> (8) Those actions for which jurisdiction may be properly granted by regulations of the Office of Personnel Management (OPM).

The relevant OPM regulations, subpart A of the aforementioned part 300, in turn provide, in pertinent part:[8]

> *Employment practices.* A candidate who believes that an employment practice which was applied to him or her by the Office of Personnel Management violates a basic requirement in § 300.103 is entitled to appeal to the Merit Systems Protection Board * * *.

Thus, to be appealable an action must not only meet the requirements of section 300.-103,[9] but as a threshold matter it must be an employment practice within the meaning of subpart A. It is the question whether the misapplication of the time-in-grade restrictions (subpart F) is an employment practice within the meaning of subpart A that separates the parties on appeal.

Analysis must begin with the definition of employment practices in subpart A:[10]

> For the purpose of this subpart, the term "employment practices" includes the development and use of examinations, qualification standards, tests, and other measurement instruments.

The board, in the *Hellman* case[11] on which it solely relied in its decision in this case, interpreted this language narrowly. It held, in essence, that the term "employment

---

**5.** *Rosano v. Department of the Navy,* 699 F.2d 1315, 1318–20 (Fed.Cir.1983); *Atwell v. Merit Systems Protection Board,* 670 F.2d 272, 280 (D.C.Cir.1981).

**6.** 5 U.S.C. § 7701(a) (Supp. V 1981).

**7.** 5 C.F.R. § 1201.3(a)(8) (1983).

**8.** 5 C.F.R. § 300.104(a).

A problem with the record in this case is the existence of an Army personnel action when the regulation at issue refers to an appealable action taken by the Office of Personnel Management. We believe that on this particular record the action taken against petitioner can fairly be attributed to OPM.

OPM has been involved in this action from the outset. It was made aware at an early date of the misapplication of time-in-grade regulations, yet we can discern no effort whatsoever by OPM to correct (as opposed to circumvent) what was a flagrant violation of OPM's own regulations. Indeed, OPM became the sole defender of the Army's action in this case. Apart from the letter of rejection and an independent settlement effort, we can find no Army participation in this litigation. The board itself named OPM rather than the Army as respondent and has consistently treated OPM as the

governmental actor in this case. OPM never objected to being named as respondent. Whatever it said before the board in briefs, it has not contested on this appeal what is in essence a board finding that OPM was the governmental actor in this case and was therefore the proper respondent.

Jurisdiction, to be sure, is not a waivable matter, but that is not the issue here. OPM's involvement in the Army's action is a fact on which jurisdiction is based. The OPM can concede (or waive) a fact, as it did in the particular facts of this case. Here, regardless of the Army's role, OPM has deliberately involved itself so deeply in the taking and defense of a personnel action that it cannot be said to be independent of it.

**9.** Section 300.103, "Basic requirements," mandates that an employment practice be (a) based on a "job analysis" that sets out the duties of and qualifications for the position, (b) relevant to performance in the position, and (c) not discriminatory.

**10.** 5 C.F.R. § 300.101.

**11.** *Hellman v. Office of Personnel Management,* MSPB Docket No. AT360A7990002 (Mar. 29, 1982).

practices" *only* includes examinations, measurement tools, and qualifications directly relating to merit. The board claimed that subpart A is exclusively concerned with discrimination and the prevention of non-merit selection. The board contrasted this narrow purpose of subpart A with an equally narrow, and quite different, purpose of subpart F, the time-in-grade restrictions. Subpart F, the board stated, is the lineal descendant of the so-called Whitten Amendment,[12] an emergency fiscal measure to control the rapid growth of the work force during the Korean War, which expired in 1978.[13] The time-in-grade restrictions are therefore, the board argues, not a simple regulation establishing another qualification for eligibility but an overriding mandate not subject to review by the board.

We see two crucial flaws in the board's reasoning. First, the board read the purpose of subpart A far more narrowly than is supported by the authority it relied upon. The board stated that in promulgating subpart A the Civil Service Commission (OPM's predecessor) "specifically cited 5 U.S.C. §§ 7151 and 7154 as authority for issuance. These sections generally relate to the antidiscrimination policy and minority recruitment program of the federal government."[14] In fact, the cited authority reads as follows:[15]

> AUTHORITY: The provisions of this Subpart A issued under 5 U.S.C. secs. 3301, 3302, * * *. Secs. 300.101–300.104 *also* issued under 5 U.S.C. secs. 7151, 7154, * * *. [Emphasis supplied.]

Sections 7151 and 7154 are consistent supporting authority cited *in addition to* sections 3301 and 3302, which are general authorizations to regulate the civil service.[16]

Sections 7151 and 7154 were not even mentioned in the original notice of proposed rulemaking, though sections 3301 and 3302 were.[17] The only conclusion that can be drawn from the authority for subpart A is that sections 7151 and 7154 are mentioned specifically in relation to it, not because they are necessarily the subpart's basis or its main purpose, but because sections 7151 and 7154 have nothing whatever to do with the other subparts.

The second flaw is that the history of subpart F is given far too much weight. While its pedigree is significant, the Whitten Amendment, having expired, subpart F is a regulation like any other. As such, it is entitled to no less scrutiny as it affects the rights of civil servants. Furthermore, while time-in-grade restrictions no doubt contribute to fiscal stability, they may well also ensure an experienced work force—a "merit" consideration.

We therefore conclude that the origins of subparts A and F do not prove that time-in-grade restrictions are not qualifications or employment practices. The opposite conclusion, we believe, is compelled by an examination of the language and structure of the relevant provisions.

The definition in section 300.101—"the term 'employment practices' includes"—suggests a broad meaning. The term itself, "employment practices," has a naturally broad and inclusive meaning that would ordinarily embrace the application of time-in-grade restrictions. The definition is couched in inclusive language, which does not imply that anything within the natural meaning is excluded.[18] In addition, section

---

**12.** Supplemental Appropriation Act, 1952, § 1310(c), 65 Stat. 758, 1951 U.S.Code Cong. & Ad.News 767.

**13.** Pub.L. No. 94–412, § 101(a), 90 Stat. 1255, 1255 (1976) (all powers under § 1310 of Supplemental Appropriation Act, 1952, terminate on Sept. 14, 1978).

**14.** *Hellman,* slip op. at 3.

**15.** 36 Fed.Reg. 15,447 (1971); *see also* 5 C.F.R. § 300.101 headnote.

**16.** 5 U.S.C. §§ 3301, 3302 (1976 & Supp. V 1981).

**17.** 36 Fed.Reg. 11,817 (1971).

**18.** *Pfizer Inc. v. India,* 434 U.S. 308, 312 & n. 9, 98 S.Ct. 584, 587 & n. 9, 54 L.Ed.2d 563 (1978); *United States v. New York Tel. Co.,* 434 U.S. 159, 169 & n. 15, 98 S.Ct. 364, 370 & n. 15, 54 L.Ed.2d 376 (1977); *Helvering v. Morgan's, Inc.,* 293 U.S. 121, 125 n. 1, 55 S.Ct. 60, 61 n. 1, 79 L.Ed. 232 (1934). The board itself has recognized this principle. *Allen v. United States Postal Service,* 2 M.S.P.B. 582, 587 n. 11 (1980).

300.101, before defining employment practices, states:[19]

> The purpose of this subpart is to establish principles to govern * * * *the employment practices* of the Federal Government generally, and of individual agencies, *that affect the recruitment,* measurement, *ranking, and selection* of individuals * * *. [Emphasis supplied.]

Following as it does this broad statement, therefore, the inclusive definition of employment practices cannot reasonably be read to apply narrowly to tests alone.

The administrative history underlines this conclusion. The proposed subpart was described as "regulations to insure that examining, testing, standards *and* employment practices"[20] (emphasis supplied); the final version described "examining, testing, *and other* employment practices"[21] (emphasis supplied). Both descriptions suggest a scope of employment practices that goes beyond merit-based tests.

Furthermore, as a structural matter, it is significant that subpart A does not go on to describe or prescribe "examinations, qualification standards, tests, and other measurement instruments." It is therefore a provision of general applicability.[22] This conclusion also follows from the placement of subpart A among the general provisions of part 300, "Employment (General)." We therefore hold that the application of time-in-grade restrictions is an employment practice within the meaning of subpart A and is appealable thereunder.

Perhaps recognizing the awkwardness of judging time-in-grade restrictions by the relevance, job analysis, and discrimination "Basic requirements" of section 300.103[23]—the second half of the appeal standards set out in section 300.104(a)[24]—and wishing to avoid the effect of *Hellman,* petitioner suggests that we distinguish between the *application* of time-in-grade restrictions to an individual and their *validity* with respect to a particular job. While this is a valid theoretical distinction, it has little practical significance here. Unlike tests or merit qualifications, the exact contours and requirements of time-in-grade restrictions are set out by regulation, equal in dignity to the "Basic requirements" in section 300.103. Their *validity* as applied to a particular job has, in this sense, already been confirmed by regulation, and applicability is the only remaining issue. *Hellman,* therefore, cannot be distinguished, but it can be reinterpreted simply to affirm that time-in-grade restrictions are per se valid within the regulatory scheme and that their validity is therefore not appealable. Their application, however, can be considered by the board to the same extent as any other employment practice.

The decision of the board is reversed, and we remand for reconsideration in light of this opinion.

REVERSED AND REMANDED.

SKELTON, Senior Circuit Judge, dissenting.

I respectfully dissent, because I cannot agree with the reasoning of the majority nor with the result it reaches.

This is a simple case, although both the Board (MSPB) and the majority have by their opinions made it appear to be complicated. The sole issue is whether the Board has jurisdiction of the case. The majority recognizes this to be true, but proceeds to disregard the issue and, like the Board, devotes its opinion to a complicated discussion of whether the application of the time-in-grade regulation of the OPM by the Army is an employment practice. As shown below, whether the application of this regulation is an employment practice is

---

19. 5 C.F.R. § 300.101.

20. 36 Fed.Reg. 11,817.

21. 36 Fed.Reg. 15,447.

22. Tests, for example, are provided for in parts 332 and 337. It would not be anomalous for subpart A to obtain within its own part.

23. *See supra* note 9.

24. *See supra* text accompanying note 9.

wholly immaterial and irrelevant to the jurisdictional issue in the case.

The jurisdictional requirements for the appeal of this case to the Board is set forth in 5 C.F.R. § 300.104(a), which provides as follows:

> Employment practices. A candidate who believes that an employment practice *which was applied to him or her by the Office of Personnel Management* violates a basic requirement in § 300.103 is entitled to appeal to the Merit Systems Protection Board * * *. (Emphasis supplied)

Thus, to be an appealable action, it must meet the requirements of this regulation. The petitioner must show that these requirements have been met before the Board can consider his case. He has wholly failed to carry this burden.

The petitioner has failed to show that the OPM applied the time-in-grade regulation to him either directly or indirectly. It did not do so directly, because no official or person connected with the OPM did anything or took any action to apply the regulation to the petitioner. Everything that was done was by the action of the Army. It cannot be successfully argued that the OPM indirectly applied the time-in-grade restriction to the petitioner by including it in the OPM regulations, as it is agreed by all parties that the regulation does not apply to the petitioner because he is in the excepted service.

It is clear that since the Army wrongfully applied the regulation to the petitioner in denying him the job he seeks, and the OPM did nothing whatsoever, the Board has no jurisdiction of the case under 5 C.F.R. § 300.104(a). The majority indicates in footnote 8 of its opinion that the OPM has not raised nor briefed these defenses. In this, the majority is mistaken. These defenses were raised and briefed repeatedly before the Board. For instance, in OPM's initial response to petitioner's appeal, it stated:

> Hence, appellant has no standing to bring this appeal since *he has not shown that he has been injured by any action of OPM* as required under 5 C.F.R. § 300.104(a) before the Board's appellate jurisdiction may attach. *Woolery v. OPM*, MSPB Docket No. ATO30009002, November 19, 1980. (Joint Appendix, P. 52) (Emphasis supplied)

\* \* \* \* \* \*

> Moreover, it [Time-in-grade restriction] is not an employment practice *"applied by OPM" as required by 5 C.F.R. § 300.104(a)*. We, therefore, respectfully urge that *the Board lacks the jurisdiction to hear this matter under 5 C.F.R. Part 300* and that the appeal be denied. (Joint Appendix, P. 56) (Emphasis supplied)

These defenses were again raised by OPM before the Board in its Response to Petitioner's Petition for Review as follows:

### NO EMPLOYMENT PRACTICE WAS APPLIED BY OPM

There are two irrebuttable reasons why MSPB lacks jurisdiction to hear Mr. Dowd's appeal. The first reason, as stated by OPM in its initial response to the Washington Area Office presiding official, is that MSPB only has jurisdiction over Part 300 appeals from employment practices *applied by OPM*. In this instance, *the Department of the Army applied OPM's time-in-grade restrictions to Mr. Dowd* and excluded him from consideration for a position. *OPM took no action with regard to Mr. Dowd.* (Joint Appendix, P. 91) (Emphasis supplied)

\* \* \* \* \* \*

OPM submits that in this case, MSPB could, under no theory, have jurisdiction over the Department of the Army, because *appellant was not subject to an employment practice administered by OPM.* Accordingly, OPM contends that for various reasons, *MSPB does not now have, nor did it ever have, jurisdiction over Mr. Dowd's Part 300 appeal.* (Joint Appendix, P. 92) (Emphasis supplied)

Thus, it is clear that these jurisdictional issues were clearly and positively presented to the Board, as shown by these record references which we are reviewing. It is

immaterial whether these defenses are raised and discussed in briefs of OPM in the appeal to this court, because they involve the question of jurisdiction that can be raised by any party, or by the court on its own motion, at any stage of the proceedings.

Jurisdiction is always open to inquiry upon the court's own motion. *Pacific Towboat & Salvage Co. v. I.C.C.,* 620 F.2d 727 (9 Cir.1980). It is always the obligation of a federal court to determine jurisdiction. *State of Alabama Ex Rel. Baxley v. Woody,* 473 F.2d 10 (5 Cir.1973). Federal courts may raise jurisdictional questions even if the parties fail to do so. *Rowe v. United States,* 633 F.2d 799, *cert. denied,* 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981). The threshold inquiry in every case is the issue of jurisdiction. Lack of jurisdiction may not be waived by the parties nor ignored by the court. *Starobin v. United States,* 662 F.2d 747 (Ct.Cl.1981); *Reid v. Ford, Bacon and Davis Construction Corp.,* 405 F.2d 861 (8 Cir.1969). These principles apply whether the court is considering its own jurisdiction or the jurisdiction of an Administrative Board in a case appealed from the Board to the court, as in the instant case. Accordingly, it is proper for the court to consider the jurisdictional issues in the case before us whether or not they are raised and briefed by the parties. In fact, it is the duty of the court to do so.

The majority, as well as the Board, devoted considerable time and space to the question of whether the application of the time-in-grade restriction was an employment practice, and, in fact, based their decisions on their determinations of this issue, the Board saying it was not such a practice and the majority holding that it was. Actually, such a determination was wholly immaterial to the question of the Board's jurisdiction under 5 C.F.R. § 300.104(a), because in neither case did the OPM apply the regulation to the petitioner, which is required to confer jurisdiction on the Board.

The majority is sending the case back to the Board for another hearing but has provided no guidelines or instructions for the guidance of the Board. One wonders what the Board can do on such a re-hearing in view of the facts in the case and the limited authority and jurisdiction of the Board. In my opinion, the only decision that the Board can make is to find and hold that it does not have jurisdiction of petitioner's case under 5 C.F.R. § 300.104(a), because the time-in-grade regulation is not applicable to him and because OPM did not apply it to him. It appears to be an exercise in futility to remand the case to the Board for the sole purpose of allowing the Board to give the correct reason for its lack of jurisdiction instead of the wrong reason it gave on the prior hearing.

The facts and the law show that the petitioner is in the wrong forum. If he has any claim, it is against the Army. He should be seeking relief by way of mandamus or otherwise in a district court instead of pursuing this appeal.

I would hold that the Board lacks jurisdiction of this case for the reasons stated herein, and would order the case dismissed.