319 F.3d 1368
 Murray M. MEEKER, F. William Roggeveen, Jay E. Levine, and William S. Colwell, Petitioners, and
Kay Coles James, Director, Office of Personnel Management, Petitioner,
v.
MERIT SYSTEMS PROTECTION BOARD, Respondent, and
Ann S. Azdell and Donald B. Fishman, Intervenors.
 No. 01-3057.
 No. 02-3042.
 United States Court of Appeals, Federal Circuit.
 DECIDED: February 20, 2003.
 
 William F. Fox, Jr., Professor of Law, The School of Law, The Catholic University of America, of Washington, DC, argued for petitioners, Murray M. Meeker, et al.
 Todd M. Hughes, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for petitioner, Kay Coles James, Director, Office of Personnel Management. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; and David M. Cohen, Director. Of counsel on the brief were Mark A. Robbins, General Counsel; Kathie A. Whipple, Deputy General Counsel; Steve E. Abow, Eric S. Gold, Kimya Jones, and Julie Ferguson Queen, Attorneys, Office of General Counsel, Office of Personnel Management, of Washington, DC. Of counsel were Armando O. Bonilla, and Kathryn A. Bleecker, Attorneys, Department of Justice.
 Joyce G. Friedman, Attorney, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, argued for respondent. With her on the brief were Lynn A. Jennings, General Counsel; and Martha B. Schneider, Deputy General Counsel.
 William L. Bransford, Shaw, Bransford, Veilleux & Roth, of Washington, DC, argued for intervenors. With him on the brief was Debra L. Roth.
 Barton F. Stichman, National Veterans Legal Services Program, of Washington, DC, for amicus curiae The American Legion. With him on the brief was Louis J. George.
 Karin L. Kizer, Covington & Burling, of Washington, DC, for amici curiae Disabled American Veterans, et al. With him on the brief were Michael C. Boteler and Harris Weinstein.
 Before SCHALL, BRYSON, and LINN, Circuit Judges.
 BRYSON, Circuit Judge.
 
 
 1
 Petitioners Meeker et al. and the Office of Personnel Management ("OPM") appeal a decision by the Merit Systems Protection Board in which the Board concluded that the scoring formula OPM used in 1996 to evaluate candidates for the position of administrative law judge ("ALJ") violated OPM's regulations and the Veterans' Preference Act. We hold that the Board had jurisdiction to review OPM's scoring formula pursuant to the Board's authority to review "employment practices," but that it lacked jurisdiction to review the challenge to the scoring formula based on the Veterans' Preference Act. On the merits, we conclude that the 1996 scoring formula was lawfully adopted pursuant to the OPM Director's authority to grant a variation from strict adherence to the requirements of OPM's regulations and that the scoring formula therefore did not violate those regulations. Accordingly, we reverse the Board's decision in part and vacate its remedial order.
 
 
 2
 * In 1993, in accordance with its statutory authority to conduct competitive examinations for ALJs, OPM promulgated the examination scoring formula found at 5 C.F.R. § 930.203. Under that formula, applicants were required to meet minimum qualifying experience requirements. Those who met the experience requirements would be assigned a score on the "supplemental qualifications statement," a statement detailing relevant legal experiences. The applicants would then participate in three additional examination procedures: a written demonstration, a panel interview, and a personal reference inquiry. Those applicants who completed the supplemental qualifications statement and participated in the three additional examination procedures would be assigned a weighted score for each of those four parts of the examination. Based on the results of a 1990 study, OPM weighed the four parts of the examination as follows: (1) the supplemental qualification statement — 50 percent; (2) the written demonstration — 20 percent; (3) the personal interview — 20 percent; and (4) the personal reference inquiry — 10 percent.
 
 
 3
 Under the 1993 scoring formula, the total of the weighted scores ranged from 0 to 100, with 70 required to pass. In the first group of candidates examined under the 1993 scoring formula, OPM added 10.9 points to each candidate's score in order to bring the lowest weighted score up to a passing grade of 70. Veteran preference points were then added, as appropriate, with ten points being added to the scores of disabled veterans and five points being added to the scores of nondisabled veterans, as provided by the Veterans' Preference Act, 5 U.S.C. § 3309. OPM then compiled a register of all applicants who passed the examination. When agencies requested lists of certified ALJ candidates for positions in various geographic areas, OPM ranked all applicants who were eligible and available for the positions in question. The ranking was based on the assigned final ratings, augmented by veteran preference points if applicable.
 
 
 4
 In 1996, following an investigation by OPM's Inspector General into fraudulent scoring of the ALJ examinations, portions of the ALJ examination were rescored. After the rescoring, the failure rate on the examination rose dramatically, such that approximately 80 percent of the applicants failed to attain the minimum score of 70 required to qualify for ALJ certification under the 1993 formula.
 
 
 5
 Because of the extremely high failure rate, OPM decided to modify the 1993 scoring formula, rather than simply adding points to each applicant's score, as had been done before. Under the new formula, applicants who satisfied a minimum requirement of seven years' experience as an attorney involved in administrative hearings or litigation and completed the remaining parts of the examination were assigned a base score of 70 points. Applicants then received scores in accordance with the 1993 formula for the four graded portions of the examination. Under the 1996 formula, however, each applicant's weighted score for those four parts of the examination was multiplied by 0.3, so that the scores on the four graded portions of the examination ranged from 0 to 30 points, rather than from 0 to 100 points as had been the case under the 1993 formula. After the four-part weighted score was added to the 70-point base, any applicable veteran preference points were added to the applicant's total to produce the final score. Like the 1993 formula, the 1996 formula required a score of 70 to pass. Unlike the 1993 formula, however, the 1996 formula guaranteed that any applicant who met the work experience prerequisite and completed the four graded portions of the examination would receive a passing score and be placed on the register, regardless of the applicant's score on the four graded portions. Therefore, any preference eligible applicant would receive veteran preference points as long as the applicant met the work experience prerequisite and completed the graded parts of the examination.
 
 
 6
 Because the 1996 formula differed from the 1993 formula described in 5 C.F.R. § 930.203, the Director of OPM approved a variation from the regulation using the procedures outlined in 5 C.F.R. § 5.1. Under that regulation, OPM's Director is authorized to "grant a variation from the strict letter" of any OPM regulation whenever there are "practical difficulties and unnecessary hardships" in complying with the regulation, as long as the variation is "within the spirit of the [OPM] regulations, and the efficiency of the Government and the integrity of the competitive service are protected and promoted." 5 C.F.R. § 5.1.
 
 
 7
 In 1997, nonveteran applicants for the ALJ positions filed a class action appeal to the Merit Systems Protection Board claiming that the 1996 scoring formula was unlawful. Those applicants, referred to as the Azdell class, argued inter alia that the 1996 formula violated 5 C.F.R. § 300.103, which requires that any OPM employment practice, such as an examination procedure for qualifying applicants for a civil service position, must be professionally prepared, rationally related to the duties of the position, and nondiscriminatory. They also argued that the 1996 scoring formula violated the Veterans' Preference Act by giving veterans a greater preference than Congress intended for them to have.
 
 
 8
 The Board assigned the appeal to the Board's Chief Administrative Law Judge. Following an evidentiary hearing, the Chief Administrative Law Judge issued a decision on the merits of the claim, in which he found that the 1996 scoring formula for the ALJ position violated the OPM regulations and the Veterans' Preference Act. He then issued a separate decision on remedy, in which he ordered certain applicants to be given priority status in selection for open ALJ positions.
 
 
 9
 OPM sought review of the Chief Administrative Law Judge's decision by the full Board. Four veterans who had applied for ALJ positions, petitioners Meeker, Roggeveen, Levine, and Colwell ("the Meeker petitioners"), intervened and joined OPM's request for review. The full Board granted review and sustained the Chief Administrative Law Judge's ruling in principal part.
 
 
 10
 The Board held that OPM's 1996 scoring formula violated two of the three subsections of 5 C.F.R. § 300.103. In particular, the Board held that the 1996 scoring formula violated section 300.103(a) because it was not based on a job analysis of the ALJ position. The Board held that the 1996 scoring formula also violated section 300.103(b) because it was not professionally developed and that OPM therefore failed to show that there was a rational relationship between the scoring formula and performance in the ALJ position. The Board also held that the 1996 scoring formula violated the Veterans' Preference Act because, in the Board's view, it increased the effective weight of veteran preference points beyond that intended by Congress. The Board disagreed with the Chief Administrative Law Judge's analysis in one respect: it rejected his conclusion that the 1996 scoring formula violated section 300.103(c), the nondiscrimination clause of OPM's regulations regarding employment practices. With respect to the issue of remedy, the Board amended the Chief Administrative Law Judge's order in several minor respects, but otherwise upheld the order requiring OPM to give priority consideration to candidates who would have been eligible for selection but for the improper scoring formula.
 
 II
 
 11
 * Both OPM and the Meeker petitioners argue that the Board lacked jurisdiction to review OPM's 1996 scoring formula for ALJ positions. The Board invoked its jurisdiction under 5 C.F.R. § 300.104(a). That regulation authorizes a candidate for appointment to a federal civil service position to appeal to the Merit Systems Protection Board if the candidate believes that an employment practice applied to him by OPM violates a basic requirement in 5 C.F.R. § 300.103. An employment practice is any practice that affects "the recruitment, measurement, ranking and selection of individuals for initial appointment and competitive promotion in the competitive service." 5 C.F.R. § 300.101.
 
 
 12
 Section 300.103 contains three requirements with respect to any employment practice. First, an employment practice must be based on a job analysis identifying the duties of the position, the knowledge, skills, and abilities necessary to perform those duties, and the factors that are important in evaluating candidates for the position. 5 C.F.R. § 300.103(a). Second, there must be a rational relationship between performance in the position and the employment practice used to select for that position; that relationship must be demonstrated by showing that the employment practice was professionally developed. Id. § 300.103(b). Third, an employment practice may not discriminate on the basis of race, color, religion, sex, age, national origin, partisan political affiliation, or any other nonmerit factor. Id. § 300.103(c).
 
 
 13
 OPM and the Meeker petitioners contend that the underlying dispute in this case is whether the 1996 formula unduly advantages veterans by increasing the beneficial effect of the addition of veteran preference points on a candidate's final standing. The Meeker petitioners argue that the granting of veteran preference points is mandated by statute and as such is not an employment practice over which the Board has jurisdiction under 5 C.F.R. § 300.104(a).
 
 
 14
 We reject the Meeker petitioners' argument. The Veterans' Preference Act makes clear that veteran preference points, as applicable, are added to the score of a candidate who "receives a passing grade in an examination for entrance into the competitive service." 5 U.S.C. § 3309. The scoring of the examination and the award of veteran preference points are therefore separate steps in the process of calculating the final scores on which eligibility will be determined. The challenge to the 1996 scoring formula based on the asserted violation of 5 C.F.R. § 300.103(a) and (b) is therefore legally distinct from the challenge based on the Veterans' Preference Act.
 
 
 15
 OPM makes a somewhat different argument. OPM asserts that the only reason the Azdell class is challenging the 1996 scoring formula is because veteran preference points have greater weight under that formula than under the 1993 scoring formula. The effect of veteran preference points on the selection process, OPM argues, is not within the Board's authority to review. OPM further contends that relief to a class defined by the class members' nonveteran status is improper where the relative ranking of veterans and nonveterans would remain unchanged but for the addition of veteran preference points.
 
 
 16
 We disagree with OPM's submission. Section 300.104(a) gives the Board jurisdiction when two conditions are met: first, the appeal must concern an "employment practice," and second, the employment practice must be alleged to have violated one of the "basic requirements" for employment practices set forth in 5 C.F.R. § 300.103. The 1996 scoring formula for ALJ examinations is clearly an "employment practice" as that term is used in 5 C.F.R. Part 300. Its use resulted in a new qualification standard for ALJs, and thus clearly affected the "measurement, ranking and selection of individuals for initial appointment" to the ALJ positions. See 5 C.F.R. § 300.101; Dowd v. United States, 713 F.2d 720, 723 (Fed.Cir.1983) (the term "employment practices" has a broad and inclusive meaning). Indeed, this court has recently held that suspending the use of the precise scoring formula at issue in this case is an "employment practice" within the meaning of 5 C.F.R. Part 300. Bush v. Office of Pers. Mgmt., 315 F.3d 1358 (Fed. Cir.2003). The Azdell class's challenge to the scoring formula also entailed, at least in part, an allegation that the 1996 scoring formula failed to meet the "basic requirements" for employment practices set forth in 5 C.F.R. § 300.103.
 
 
 17
 OPM argues that the Azdell class invoked the Board's jurisdiction under 5 C.F.R. § 300.104(a) "to challenge OPM's implementation of the [Veterans' Preference Act]" and that because OPM's implementation of the Veterans' Preference Act is not an "employment practice," the Board lacked jurisdiction. The Azdell class, however, challenged OPM's action not only for allegedly violating the Veterans' Preference Act, but also for allegedly violating the requirements of 5 C.F.R. § 300.103, and the Board clearly had jurisdiction to address the latter claim.
 
 
 18
 The fact that this appeal was prosecuted because certain nonveteran ALJ applicants were unhappy about the fact that the 1996 scoring formula increased the advantage of veterans over nonveterans in the competition for ALJ positions is irrelevant to the issue of jurisdiction. It is true, as OPM and the Meeker petitioners point out, that the Board lacks jurisdiction to review the five and ten extra points to which veterans and disabled veterans are statutorily entitled in the scoring of civil service examinations. The legal challenge based on the requirements of section 300.103, however, was not directed at the granting of preference points. While the motivation for taking the appeal may have been the greater impact of the veteran preference points under the 1996 scoring formula, the motivation for prosecuting an appeal does not determine whether a particular tribunal has jurisdiction to consider it.
 
 
 19
 OPM's argument that the Veterans' Preference Act precludes the Board from reviewing the 1996 scoring formula would have force only if the Veterans' Preference Act required OPM to adopt the 1996 scoring formula or if any scoring formula having an effect on veterans would be immunized from challenge under the OPM regulations. But OPM does not make either of those arguments in this court, nor is there any legal basis for either proposition. OPM has two separate legal obligations that are relevant here: It must generate examinations that comply with the requirements of 5 C.F.R. § 300.103, and it must then adjust the results of those examinations by adding veterans preference points, as applicable. The fact that the second step is mandated by Congress does not mean that the first step is immune from administrative review. We therefore hold that the Board properly exercised jurisdiction under 5 C.F.R. § 300.104(a) to address the Azdell class's challenge to the 1996 scoring formula.
 
 B
 
 20
 We take a different view of the question of the Board's jurisdiction to address whether the 1996 scoring formula was inconsistent with the Veterans' Preference Act. The Azdell class argued that the 1996 scoring formula violated the Veterans' Preference Act because it compressed the range of scores and thereby increased the impact of veteran preference points on the candidates' final rankings. That effect, according to the Azdell class, resulted in granting veterans more favorable treatment in the scoring process than Congress meant for them to have. The Board concluded that it had jurisdiction to address that issue on the ground that, "once the Board determines it has jurisdiction over an OPM employment practice, it is required to consider whether OPM acted in accordance with law [under] 5 U.S.C. § 7701(c)(2)(C)."
 
 
 21
 That jurisdictional theory is incorrect. The statute that the Board invoked, 5 U.S.C. § 7701(c)(2)(C), gives the Board authority to consider whether any agency decision is not in accordance with law, but only with respect to agency decisions that are within the Board's jurisdiction. The Board does not have general jurisdiction to entertain any statutory challenge to an employment practice. Rather, the Board's jurisdiction is strictly confined to those matters over which it has been given jurisdiction by statute, rule, or regulation. See Goines v. Merit Sys. Prot. Bd., 258 F.3d 1289, 1294 (Fed.Cir.2001); Maddox v. Merit Sys. Prot. Bd., 759 F.2d 9, 10 (Fed.Cir.1985); 5 U.S.C. § 7701(a); 5 C.F.R. § 1201.3. In challenges to employment practices, the relevant OPM regulation, 5 C.F.R. § 300.104(a), does not give the Board jurisdiction over any and all legal challenges to employment practices; it grants jurisdiction to the Board only with respect to challenges based on the three grounds set forth in 5 C.F.R. § 300.103. See Vesser v. Office of Pers. Mgmt., 29 F.3d 600, 603 (Fed.Cir.1994) (an "employment practice" gives rise to an appeal to the Board only if the employment practice "has been applied ... in a manner that violates a `basic requirement' as defined in 5 C.F.R. § 300.103"); Dowd, 713 F.2d at 722 ("to be appealable an action [based on an employment practice] must ... meet the requirements of section 300.103"). It is therefore incorrect to say, as the Board did, that once the Board has properly exercised jurisdiction over an OPM employment practice, it has jurisdiction to consider whether that employment practice violates any law whatsoever.[1]
 
 
 22
 The Chief Administrative Law Judge used a different route to reach the question whether OPM's 1996 scoring formula violated the Veterans' Preference Act. He held that the 1996 scoring formula violated 5 C.F.R. § 300.103(c), one of the three grounds on which the Board has jurisdiction to review OPM employment practices. That provision requires that OPM employment practices not discriminate on various specified grounds or on any other "nonmerit factor." The Chief Administrative Law Judge concluded that the 1996 scoring formula discriminated on the basis of a nonmerit factor because the scoring formula has the effect of giving veterans a greater advantage than Congress intended under the Veterans' Preference Act. The Board, however, rejected the Chief Administrative Law Judge's reliance on section 300.103(c), holding that in light of Congress's decision to except veterans from the strict application of merit selection principles and to reward them for service to the country, "an individual's status as a preference eligible applicant is not a `nonmerit factor' within the context of 5 C.F.R. § 300.103(c)." No party to the proceedings before us has challenged that aspect of the Board's decision. We therefore decline to consider whether the Board was correct in holding that 5 C.F.R. § 300.103(c) has no application to benefits accorded to preference eligibles. By extension, we decline to decide whether the Board, in an appropriate case, could address a claim that any preference accorded to veterans would constitute discrimination on a nonmerit basis (in violation of 5 C.F.R. § 300.103(c)) unless the preference strictly complied with the Veterans' Preference Act.[2]
 
 
 23
 To summarize our jurisdictional analysis, we hold that the Board properly asserted jurisdiction under 5 C.F.R. § 300.104(a) to address the appellants' challenge to the 1996 scoring formula on the ground that it violated 5 C.F.R. § 300.103(a) and (b). We further hold, however, that the Board erred when it asserted jurisdiction to address the claim that the 1996 scoring formula violated the Veterans' Preference Act, because the Board does not have general, free-standing jurisdiction to address claims that an OPM employment practice is not in accordance with law.
 
 III
 
 24
 On the merits of the claims arising under 5 C.F.R. § 300.103, the Board found that the 1996 scoring formula violated the requirements of section 300.103 in two ways: (1) it was not based on a job analysis that identified the knowledge, skills, and abilities required to perform the duties and responsibilities of the ALJ position, as required by section 300.103(a), and (2) it was not shown to have been professionally developed, and thus was not demonstrated to be rationally related to performance in the ALJ position, as required by section 300.103(b).
 
 
 25
 OPM concedes that no job analysis was performed as part of the process of constructing the 1996 scoring formula, but it contends that the new formula was professionally developed by OPM staff and that the factors taken into account under the 1996 scoring formula are rationally related to the duties of the ALJ position. In any case, OPM argues, any deficiencies in the process of constructing the 1996 scoring formula were obviated by the fact that the Director issued a variation permitting the 1996 scoring formula to go into effect without strict compliance with the requirements of the OPM regulations, including 5 C.F.R. § 300.103.
 
 
 26
 * The Chief Administrative Law Judge concluded that the Director's variation from the 1993 formula was invalid because it was not "within the spirit of § 930.203(e), which requires a 100-point scale." The Chief Administrative Law Judge further found that because the change from a 100-point scale to a 30-point scale "significantly increases the advantage [accorded to preference eligibles] beyond that intended by Congress, ... the integrity of the competitive service was not protected."
 
 
 27
 The Board did not reach the question whether the variation was invalid because, in the Board's view, even if the variation was valid it had only a limited effect. As the Board interpreted the variation, it had the effect of waiving strict compliance with 5 C.F.R. § 930.203(e), which sets forth the 1993 scoring formula for the ALJ examination. It did not, however, waive the requirements for valid employment practices set forth in 5 C.F.R. § 300.103.
 
 
 28
 We disagree with both the Chief Administrative Law Judge and the Board regarding the validity and scope of the variation. Contrary to the Chief Administrative Law Judge, we conclude that the variation was valid. Contrary to the Board, we hold that the variation was broad enough to waive strict compliance with the requirements of 5 C.F.R. Part 300.
 
 B
 
 29
 The authority of the Director of OPM to issue a variation from strict compliance with the requirements of the OPM regulations is codified in 5 C.F.R. § 5.1, which was promulgated by the President through an executive order. Exec. Order No. 12,107, 44 Fed.Reg. 1055 (Dec. 28, 1978). Section 5.1 provides that the Director of OPM may grant a variation from the requirements of particular OPM regulations whenever the Director determines that complying with the strict letter of such a regulation would result in practical difficulties and unnecessary hardships. In order to authorize a variation, the Director must find that the variation is within the spirit of OPM's regulations and that "the efficiency of the government and the integrity of the competitive service are protected and promoted." 5 C.F.R. § 5.1. A valid variation requires an official record showing (1) the particular practical difficulty or hardship involved, (2) what is permitted in place of what is required by the regulations, (3) the circumstances that protect the integrity of the competitive service, and (4) a statement limiting the application of the variation to the continuation of the conditions which give rise to it. Id.
 
 
 30
 On June 21, 1996, the Director of OPM issued an official "Notice of OPM Variations" granting a variation authorizing the ALJ examinations to be scored in a different manner than that prescribed in 5 C.F.R. § 930.203(e), the regulation that embodied the 1993 scoring formula. The purpose of the variation was to implement the 1996 scoring formula, which was based on a 70-to-100 point scale, and to relieve OPM from having to follow the 1993 regulation, which was based on a 0-to-100 point scale, with a score of 70 points required to pass. Consistent with the requirements of section 5.1, the Director noted for the record that (1) the variation was granted to avoid the practical difficulties that would be involved in revising the final ratings of the more than 1,700 candidates on the ALJ register; (2) a transmuted scale of 70 to 100 is frequently used in unassembled civil service examinations (i.e., examinations based on education, experience, or past achievement, rather than a written test); (3) the transmuted scale of 70 to 100 is consistent with merit system principles; and (4) the variation is limited to transmutation scales used by unassembled examinations specified in the regulation.
 
 
 31
 The variation issued in connection with the 1996 scoring formula satisfied each of the requirements of 5 C.F.R. § 5.1. Before issuing a variation, the Director must find that the variation whole (not simply the spirit of the particular regulation being displaced) and that the variation protects and promotes the efficiency of the government and the integrity of the competitive service. 5 C.F.R. § 5.1. Those are very general criteria, and it is plain to us from the language of section 5.1 that the application of those standards was intended to be left mainly to the discretion of the Director of OPM, not to be closely scrutinized by the Merit Systems Protection Board or this court. The regulation protects against capricious use of the power to issue variations by requiring documentation of the need for the variation and by requiring that the Director issue a variation only upon concluding that the variation would be consistent with the efficiency of the government and the integrity of the competitive service. While a clear abuse of the Director's discretion in making those judgments could be challenged on review, we hold that there was no such clear abuse of discretion in this case.
 
 
 32
 In the first place, the variation cannot be said to be inconsistent with the spirit of the OPM regulations simply because 5 C.F.R. § 930.203(e) required a 100-point scale and the 1996 scoring formula did not. The whole point of the variation was to abandon the 0-to-100 point scale in favor of a 70-to-100 point scale for the graded portions of the ALJ examination under which anyone with the requisite experience would be deemed to have earned a 70-point passing score. If a variation is invalid because it departs from the requirements of the very regulatory provision that the variation displaces, it is hard to imagine any variation of consequence that would be found valid.
 
 
 33
 Moreover, the OPM regulations make clear that the requirements of 5 C.F.R. Part 300 are to be applied in a practical manner consistent with administrative feasibility. Section 300.101 states that "the purpose of this subpart is to establish principles to govern, as nearly as is administratively feasible and practical, the employment practices of the Federal Government generally, and of individual agencies...." (emphasis added). See also 5 C.F.R. § 300.102(a) ("This subpart is directed to implementation of the policy that employment practices be practical in character...."). The 1996 scoring formula mirrored the 1993 formula in most respects, differing only in ways that OPM regarded as necessary to avoid giving failing scores to applicants who were qualified for the ALJ position based on their experience. It was that same objective — to ensure that any applicant with the requisite experience would earn a passing score — that had previously led OPM to add 10.9 points to each applicant's total score calculated under the 1993 formula.
 
 
 34
 In the notice accompanying the variation, the OPM Director pointed out (and the evidence before the Board established) that other federal competitive examinations were conducted on a 70-to-100 point basis. As one witness explained, the "standard federal examining practice" is to "convert[] raw or weighted scores to a final scale of 70 to 100." The fact that other competitive examinations are graded on a 70-to-100 point basis is strong evidence that such a "compressed" scoring scale is not inconsistent with the spirit of OPM's regulations and does not violate the integrity of the competitive civil service. Moreover, OPM's decision to give a passing score of 70 to all applicants who have seven years of relevant legal experience and who complete the other portions of the examination does not reflect an abandonment of merit selection principles; it simply treats as at least minimally qualified for the ALJ position all persons with sufficient experience in the field. Given the important role that relevant experience has always played in the selection of ALJs, we are not prepared to conclude that the use of experience as establishing a baseline of minimal qualification is inconsistent with the integrity of the competitive service or OPM's regulations governing employee selection.
 
 
 35
 To be sure, the use of a 70-to-100 point scale for the four graded portions of the examination has the effect of according greater weight to the veteran preference points that are added to the applicants' examination scores. But almost any change in the grading system would be likely to have an effect on the relative impact of veteran preference points. For example, if OPM had retained the 1993 scoring formula, which produced an 80 percent failure rate after the ALJ examinations were rescored following the Inspector General's investigation, that formula presumably would have excluded a very large percentage of veteran applicants from consideration for the ALJ positions and denied them any benefit at all from their veteran preference points. Under such a regime, a veteran who scored 69 would lose out to a nonveteran who scored only one point higher. In that circumstance, it could be said that the five or ten point bonus provided by the Veterans' Preference Act would be diluted by the use of a high failure rate.
 
 
 36
 Similarly, the ultimate impact of the veteran preference points can be dramatically affected by the range of scores that the examination graders employ in the grading process. If the graders used a wide range of scores in grading the best to the poorest performing candidates, so that the scores ranged, for example, from a low score of 40 to a high score of 95, the effect of the veteran preference points would be reduced. On the other hand, if the graders bunched the scores more closely together so that, for example, the total scores ranged from a low score of 75 to a high score of 85, the effect of the veteran preference points would be increased. In short, contrary to the assumption underlying the Chief Administrative Law Judge's decision with respect to the variation, there is no scoring system that is wholly neutral with respect to the impact of veteran preference points. It is therefore incorrect to say that the variation granted by OPM's Director in 1996 was inconsistent with the integrity of the competitive service simply because it increased the effect of veteran preference points as compared to the scoring formula that it replaced. Before we could conclude that the Director was mistaken in finding that the 1996 scoring formula was consistent with the integrity of the competitive service, we would have to be persuaded that the new scoring system had the effect not merely of increasing the relative effect of the veteran preference points but of virtually displacing the competitive system altogether.
 
 
 37
 We are not persuaded that the 1996 scoring formula has had that effect. Thus, we hold that the OPM Director did not abuse his discretion in concluding that the 1996 variation was consistent with the spirit of OPM's regulations, promoted the efficiency of the government, and preserved the integrity of the competitive service. Accordingly, we hold that the 1996 variation validly relieved OPM from the obligation to adhere to the 1993 formula specified in section 930.203(e) to rank ALJ applicants.
 
 C
 
 38
 We also disagree with the Board's conclusion that the variation did not have the effect of relieving OPM of the need to comply with the requirements of 5 C.F.R. Part 300. As noted, the Board rejected OPM's reliance on the variation on the ground that, by its terms, the variation excused OPM only from compliance with the specific regulation governing the scoring of ALJ examinations, 5 C.F.R. § 930.203(e); it did not expressly relieve OPM from the need to satisfy the general requirements governing employment practices found in 5 C.F.R. § 300.103. If the Director intended to vary from the requirements of section 300.103, the Board reasoned, he was required to expressly refer to that regulation as displaced.
 
 
 39
 Under the Board's reasoning, the Director of OPM would be required to trace the implications of any variation throughout the system of OPM regulations and would have to identify explicitly any regulatory provisions that the variation was intended to waive. That is an unreasonable burden to place on the agency. The point of a variation is to implement a particular procedure that would otherwise be inconsistent with regulatory requirements. In issuing such a variation, the OPM Director obviously intends to waive any regulations inconsistent with the new procedure set forth in the variation. It makes no sense to suggest that the failure to specifically recite some regulation that would be inconsistent with the procedure prescribed in the variation indicates that the Director intended not to waive that regulation and thus for the variation to have no effect.
 
 
 40
 In the present case, for example, the OPM Director made clear in the variation notice that OPM intended to authorize the use of the 1996 formula in place of the 1993 formula. If the Board's reading of the variation is correct, then the Director performed a futile act by authorizing the use of a new formula that was impotent from its creation because it did not meet the requirements of Part 300.
 
 
 41
 OPM acknowledges that the 1996 scoring formula does not comply with all of 5 C.F.R. § 300.103. Ms. Turpenoff, the director of ALJ staffing operations at OPM during the relevant time period, testified that OPM "didn't have any of [the] job analysis data" that would be required by 5 C.F.R. § 300.103 to construct a new scoring formula. She further testified that OPM "decided that the best course of action was to ... convert[] raw or weighted scores to a final scale of 70 to 100," but because OPM "had no job analysis data" to support this new formula, the agency "asked for a variation."
 
 
 42
 From the record, it is clear to us that the request for a variation was based not only on OPM's decision to vary the terms of the 1993 scoring formula, but also on OPM's inability to do a complete validation of the new scoring formula as quickly as was necessary to fill the pending ALJ vacancies. Thus, it is apparent that the variation was intended to waive the requirement of compliance not only with the regulation establishing the 1993 scoring formula, 5 C.F.R. § 930.203, but also with the relevance and job analysis requirements of 5 C.F.R. Part 300 by directing the use of an unvalidated scoring formula in place of the 1993 formula.
 
 
 43
 As long as the Director of OPM cannot be said to have abused his discretion in concluding that the variation was within the spirit of the OPM regulations and that the efficiency of the government and the integrity of the competitive service were protected and promoted, the Director's discretion to issue a variation must be upheld. As we have explained above, we do not believe the Director abused his discretion in making those findings. We therefore reverse the Board's ruling that the Director's variation violated OPM's regulations.
 
 IV
 
 44
 In sum, we hold that the Board had jurisdiction to address the question whether OPM's 1996 scoring formula for ALJ examinations was inconsistent with the provisions of 5 C.F.R. § 300.103. On the merits, however, we reverse the Board's decision on that issue because of the variation granted by the OPM Director under 5 C.F.R. § 5.1. We hold that the Board lacked jurisdiction to address the claim that the 1996 scoring formula violated the Veterans' Preference Act, and we therefore reverse the Board's order with respect to that issue on jurisdictional grounds. In light of our disposition on the merits, we find it unnecessary to address the other substantive and procedural issues raised by OPM and the Meeker petitioners, such as whether the Meeker petitioners were denied due process by not being made parties to the Board proceedings at the outset, and whether the Board's remedial order was proper.
 
 
 45
 Each party shall bear its own costs for this appeal.
 
 
 46
 
 REVERSED.
 
 
 
 
 Notes:
 
 
 [1]
 This court's decision inLackhouse v. Merit Systems Protection Board, 773 F.2d 313 (Fed. Cir.1985), is not to the contrary. In that case, the court rejected the argument that the Board lacked jurisdiction to address a claim that a particular OPM regulation was inconsistent with the Veterans' Preference Act. The question presented to the court was which entity was applying the relevant employment practice, OPM or the IRS, the employing agency. The court did not address the scope of the Board's jurisdiction over claims that an OPM regulation is incompatible with the Veterans' Preference Act. The Lackhouse case therefore has no precedential force with respect to that jurisdictional issue. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 119, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Fla. Power & Light Co. v. United States, 307 F.3d 1364, 1371 (Fed.Cir.2002).
 
 
 [2]
 We likewise decline to reach the question whether the Board could have addressed the validity of the 1996 scoring formula under the Veterans' Preference Act based on the Board's authority under 5 U.S.C. § 1204(f) to review rules or regulations promulgated by the Director of OPM. The parties did not press that theory of jurisdiction on the Board, the Board did not invoke that theory as a basis for its action, and no party has urged that theory on us